SCHOTT, Judge.
This case arose out of an accident on April 11, 1977, between a pickup truck owned and operated by plaintiff, Anthony J. Geraci, and a tractor and trailer operated by Osborne Nix, Jr., an employee of defendant, Southern Scrap Material Company, Ltd. The tractor driven by Nix was leased by Southern Scrap from Hertz Corporation, while the trailer was owned by Southern Scrap and insured by North-West Insurance Company. Plaintiff was awarded a judg *917 ment of $17,500 against Southern Scrap and Hertz. A third party demand by Hertz against North-West for contribution was dismissed. Hertz and Southern Scrap have appealed and plaintiff has answered the appeal seeking an increase in the amount of judgment. The principal issue on appeal aside from liability and quantum is entitlement by Hertz as the insurer of the tractor and its driver to a contribution by NorthWest as the insurer of the trailer considering the provisions of the Hertz rental agreement and the North-West insurance policy.
Plaintiff was operating his pickup truck at about 3 PM on a clear day on the Airline Highway access ramp into the east bound side of Interstate Highway 10 in New Orleans. This ramp consisted of two lanes which were separated from the Interstate Highway lanes by a barrier and which then merged into the expressway lanes beginning at a point where the barrier ended. Plaintiff approached the Interstate lanes in the left lane of the access ramp and upon passing the end of the barricade on his left an automobile traveling along the expressway veered to the right forcing plaintiff to apply his brakes, reducing his speed, and to move over into the right lane. At this time defendant’s vehicle ran into the rear end of plaintiff’s truck.
On the question of liability, defendants contend that they rebutted the presumption of negligence created by their rear ending plaintiff by showing that the true cause of the accident was a sudden emergency created by the unknown vehicle cutting in front of plaintiff. Defendants also argue that plaintiff was guilty of contributory negligence in failing to see the unknown vehicle sooner so that he could have reacted more slowly and carefully to the situation and prevented a hazard which led to an unavoidable accident by Nix. In support of these contentions Hertz produced a witness whom the trial judge accepted as an expert in “accident analysis” and who was allowed to testify, based on measurements he took at the scene and his reading of the deposition of plaintiff and the police report, that plaintiff was “inattentive” in failing to see the unknown vehicle sooner than he did.
We do not have the benefit of the trial judge’s reasons but he apparently reached the factual conclusion that defendants did not carry their burden to exculpate themselves from presumed liability for running into the rear of plaintiff’s truck. Defendants were unable to produce their truck driver and were forced to rely almost exclusively on their expert’s testimony. We are not impressed with that testimony and cannot conclude that the trial judge committed manifest error in his conclusions as to the liability of defendants and their failure to prove contributory negligence on plaintiff’s part. Canter v. Koehring Co., 283 So.2d 716 (1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Jones v. Meinke, 357 So.2d 838 (La.App. 4th Cir.1978) cited by defendants on the issue of liability is unpersuasive. First, it was established in the case that the accident occurred because an unknown person threw a rock which struck the windshield of the following car preventing its driver from seeing ahead of her. More important for our purposes on appeal, however, the trial court had found in favor of the following driver and this court affirmed citing the manifest error rule and Canter v. Koehring Co., supra. The same appellate reasoning applies here.
As to quantum, plaintiff was able to drive his truck away from the scene of the accident but sought' emergency medical treatment later in that day at a local hospital. He was treated by an orthopedic surgeon between June 15 and August 24, 1977, a chiropractor between August 30 and. October 19, 1977, and began seeing another orthopedist, Dr. Raymond Kitziger, in February, 1978. Dr. Kitziger diagnosed a chronic lumbosacral condition superimposed on a pre-existing arthritic condition aggravated by plaintiff’s obesity. He treated plaintiff for his injuries intermittently over the next two and a half years and concluded that plaintiff had a 5% disability of his back as a result of the accident. Plaintiff took pain *918 medications throughout this period of time, wore a corset for a while and even underwent a myelogram in April, 1980, upon the recommendation of Dr. Kitziger. He was still suffering residuals from this accident at the date of the trial in January, 1981, almost four years after the accident. On the other hand, some of plaintiff’s difficulty was undoubtedly caused by his pre-existing condition and the evidence showed that he was in a subsequent accident in October, 1980, which contributed to his problems. Plaintiff’s evidence on loss of earnings was sketchy. He was not employed on the date of the accident, but shortly after the accident he took a job with a linen service, worked there for several months, but gave it up because of his back problem. The judgment of the trial court included all special damages including medical expenses and loss of earnings. While arguments can be advanced on both sides that the award should have been lower or higher, we cannot conclude that the trial judge abused his great discretion in making the lump sum award of $17,500. Reck v. Stevens, 373 So.2d 498 (La.1979).
The most important issue in this case is presented by the third party demand of Hertz against North-West Insurance Company. Hertz leased the tractor to Southern Scrap pursuant to a written contract which provided as follows:
“Lessor provides liability coverage for Customer and any authorized operator, and no others, subject to the limitations of paragraphs 4 and 6(a) on page 2 and the paragraphs directly above the signature line on page 1 (and not otherwise) in accordance with the standard provisions of a Basic Automobile Liability Policy under a policy of insurance or as a qualified self-insurer against liability arising from the use of the Vehicle with limits as follows: IF A TRUCK, $10,000 each person, $20,000 each accident for bodily injury, including death, and $5,000 each accident for property damage or with limits of liability up to the requirements of the Financial Responsibility Law or other applicable statute of the state or other jurisdiction in which the accident occurred, whichever is greater; IF A TRACTOR $100,000 each person, $300,000 each accident for bodily injury including death, and $25,000 each accident for property damage; IF A TRAILER, NO COVERAGE. Coverage hereunder shall automatically conform to the requirements of any “No Fault” Law which may be applicable. In the event that coverage is imposed, by operation of law, to the benefit of any person other than Customer or any authorized operator described herein, then the limits of such coverage shall be the minimum requirements of the Financial Responsibility Law or other applicable statute of the state or other jurisdiction in which the accident occurred. A specimen copy of a Basic Automobile Liability Policy is available for inspection at the main office of Lessor. Lessor warrants that, to the extent permitted by Law, the coverage for the rented truck or tractor is primary as respects any other insurance available to Customer or other authorized operator as defined in this Agreement.”
Under the North-West policy Southern Scrap retained individual liability for each occurrence up to $25,000, so that it was self-insured to that extent. It provided for a loss fund which would cover the insured’s retained liability and would serve as security to North-West for the purpose of indemnifying it for its liability to third-parties up to $25,000. The policy contains the following pertinent provisions:
“6. Other Insurance: The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company’s liability under this policy shall not be reduced by the existence of such other insurance.
When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable un *919 der this policy for a greater proportion of the loss than that stated in the applicable contribution provision below;”

“VI. ADDITIONAL CONDITION
Excess Insurance — Hired and Non-owned Automobiles
With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured.”
Hertz contends that it and North-West are co-primary insurers and the loss should be pro-rated at for North-West to one part for Hertz based on the limits of coverage of $250,000 and $100,000 respectively. Hertz relies on Aetna Cas. & Sur. Co. v. Hertz Corp., 366 So.2d 1362 (La.1978) in support of this contention, making the following argument:
“Applying the facts of this case to Aetna v. Hertz, the situations are identical. Hertz under its rental contract affords coverage for its tractor alone and NorthWest affords primary coverage for the trailer alone. Once you couple these two movables together, they become united and as such the'primary excess clauses are mutually repugnant and thereby cancel one another; ergo, co-primary insurers.”
On the other hand, North-West makes the following arguments: 1) the coverage afforded by Hertz under its agreement is the sole primary coverage obligating it to bear responsibility for payment up to $100,-000; 2) alternatively, the $25,000 self insurance retention by its insured could be considered the primary layer of insurance along with the Hertz coverage, so that the liability of its insured, Southern Scrap, should be no greater than 20% of the total primary coverage available in the amount of $125,000; 3) its insurance should be considered only excess insurance; and 4) Aetna Cas. & Sur. Co. v. Hertz Corp., supra, cannot be applied retroactively to the facts of this case.
In Aetna Cas. & Sur. Co. v. Hertz Corp., supra, the court was confronted with the following question certified to it by the United States Court of Appeals:
“2. If the insurance agreement covering the tractor (rented by the driver’s employer) does not exclude the driver, whether that policy is co-primary with an insurance agreement covering the attached trailer (owned by the employer), when:
(a) the trailer policy provides only excess coverage when the ‘automobile’ is not owned by the employer and the sole proximate cause of the accident was found to be the driver’s negligence in the vehicle’s operation; and
(b) the agreement insuring the tractor provides for coverage primary ‘as respects any other insurance available,’ the trailer policy does not contain the same language, and while both policies contain proration clauses, the trialer proration clause takes effect only when other insurance applies on the same basis, [footnote omitted] 573 F.2d 306 (5th Cir.1978).”
The court answered this question to the effect that both Aetna and Hertz provided primary insurance in the case so that the loss should be pro-rated between the companies. It held that the provision in the Aet-na policy that its insurance shall be excess with respect to a hired or non-owned automobile was inapplicable because the tractor and trailer became one vehicle for the transportation of cargo, with the result that it was partially owned by Aetna’s insured at the time of the accident.
In support of its first contention NorthWest relies on the concluding sentence of the paragraph of the Hertz rental agreement quoted above that its coverage on the tractor “is primary as respects any other insurance available to Customer or other authorized operator as defined in this agreement.!’ However, there is no discernible difference between this language and that partially quoted in the Aetna case in this context:
“the agreement insuring the tractor provides for coverage primary, ‘as respects any other insurance available,’ .”
*920 The Supreme Court had no difficulty concluding that both Hertz and Aetna provided primary insurance despite the language of the rental agreement.
Next, North-West points to a provision in the rental agreement which says that “the customer agrees to indemnify and hold Hertz harmless from and against all loss, liability and expense, but only for such loss in excess of the Hertz coverage.” We fail to see how this language can provide NorthWest with any comfort since the Supreme Court held without equivocation that the Hertz coverage was not primary as to Aet-na’s but, rather, co-primary with it.
North-West also relies on the language of its policy quoted above that its insurance was excess since the Hertz tractor was “a hired automobile or a non-owned automobile.” But this language is identical to that contained in the Aetna policy and which the Supreme Court construed as inapplicable based on the reasoning that once the tractor and trailer were joined as a unit they became an “automobile” partially owned by Aetna.
Finally, North-West contends that the $25,000 loss fund — liability retention provisions of the policy supports a different result than that of the Aetna case. It argues that Southern Scrap was self insured up to $25,000 with the result that the Hertz coverage was the only primary insurer and that it (North-West) can only be an excess insurer over $25,000 of exposure. Alternatively, North-West contends that Southern Scrap as a self insurer provides $25,000 of primary coverage to be pro-rated with Hertz’ $100,000 of coverage with the result that Southern Scrap would pay 20% of plaintiff’s judgment.
The fallacy of this argument is its failure to recognize the true relationship between North-West and Southern Scrap. The policy is a standard automobile liability policy in which North-West agrees to pay on behalf of its insured any sums which the insured becomes obliged to pay. Third parties who suffer damages as a result of the negligence of Southern Scrap may proceed against North-West without regard to the $25,000 liability retention provisions and need not even join Southern Scrap. LSA-R.S. 22:655. The loss fund provisions of the policy recognize this precisely by including the following in its statement of purpose:
“(B) As security to the Company for the purposes of indemnifying the company for that portion of claims and expenses for which the company would be liable directly to claimants or other third parties but falling into that part of the liability retained by the insured.”
Thus, as to third parties North-West is a typical insurer and in this sense Southern Scrap is not self insured. Consequently North-West is co-primary insurer with Hertz as to plaintiff’s claim.
Furthermore, North-West’s exposure to third parties such as plaintiff is up to $250,-000 so that the correct proration between Hertz and it is one part to two and one-half parts.
We recognize that the end result of this decision may be to make Southern Scrap liable for $12,500 of plaintiff’s $17,500 recovery but this is so not because Southern Scrap is a self insurer, but because of its contract with its insurer. Hertz is legally entitled to proration against North-West. What happens thereafter is an internal affair between insurer and insured. The underlying purpose of the loss fund provisions is not to make Southern Scrap a self insurer but to reduce premiums on an overall basis. Presumably, it is more economical for Southern Scrap to pay the first $25,000 of each loss than to pay increased premiums for the added coverage if the loss fund provisions were not incorporated in the policy-
It follows from the foregoing discussion that North-West’s third argument is without merit. It is not an excess insurer as regards plaintiff or Hertz just as Aetna was not an excess insurer in Hertz v. Aetna, supra.
Finally, North-West argues that the Aetna case cannot be applied retroactively to the facts of this case because its policy was written in 1976, the accident occurred *921 in 1977, and the Aetna case was decided in 1978, since to do so would impair its contractual rights. In support of this position North-West cites Chevron Oil Company v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1977) and a number of cases cited therein. The court in the Chevron case discussed the factors to be considered in dealing with the nonretroactivity question and these factors do not seem to have application to the case at hand. For the most part, the doctrine is applied where a court overrules a prior decision which theretofore had been the law and was relied on by a party seeking to avoid retroactivity. In Hertz v. Aetna, supra, the court merely interpreted the language of a rental contract and an insurance policy to determine the relative rights and obligations of the parties to those contracts. We are deciding simply that the documents involved in this case have the same meaning as the court said they had in Aetna. To agree with North-West on this point would be to reach the incongruous result of telling Hertz it was right all along in its interpretation but we must decide against it because NorthWest didn’t realize Hertz’s position was correct.
In the Aetna case, both policies were said to contain proration clauses. In this case the Hertz rental agreement obligates it to provide coverage “in accordance with the standard provisions of a Basic Automobile Liability Policy” and it professes to have a “specimen copy” of such policy available for inspection. Unfortunately, such specimen was not placed in evidence by Hertz so the record does not establish that the Hertz policy contains the standard proration clause. Under these circumstances where the failure to introduce the specimen policy appears to be a technical omission on the part of Hertz as opposed to a substantial failure in the carrying of its burden of proof a remand is warranted by C.C.P. Art. 2164 in order to prevent a miscarriage of justice. Therefore, we remand the ease to the trial court in order to provide Hertz with the opportunity of placing in evidence the specimen copy of the insurance policy referred to in the rental agreement.
Accordingly, the judgment on the main demand is affirmed. The judgment on the third party demand is reversed and the case is remanded to the trial court for the purpose discussed above. Assessment of costs will await the final outcome of the case.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
REDMANN, C.J., dissents.