# CHEVRON OIL CO. *v.* HUSON

No. 70–11.  Argued October 20, 1971—Decided December 6, 1971

*Lloyd C. Melancon* argued the cause and filed a brief for petitioner.

*Samuel C. Gainsburgh* argued the cause and filed a brief for respondent.

MR. JUSTICE STEWART delivered the opinion of the Court.

The respondent, Gaines Ted Huson, suffered a back injury while working on an artificial island drilling rig owned and operated by the petitioner, Chevron Oil Co., and located on the Outer Continental Shelf off the Gulf Coast of Louisiana. The injury occurred in December 1965. Allegedly, it was not until many months later that the injury was discovered to be a serious one. In January 1968 the respondent brought suit for damages against the petitioner in federal district court. The respondent's delay in suing the petitioner ultimately brought his case to this Court.

The issue presented is whether the respondent's action is time barred and, more particularly, whether state or federal law determines the timeliness of the action. That issue must be resolved under the Outer Continental Shelf Lands Act, 67 Stat. 462, 43 U. S. C. § 1331 *et seq.* (hereinafter "Lands Act"), which governs injuries occurring

on fixed structures on the Outer Continental Shelf. When this lawsuit was initiated, there was a line of federal court decisions interpreting the Lands Act to make general admiralty law, including the equitable doctrine of laches, applicable to personal injury suits such as the respondent's.[1] The petitioner did not question the timeliness of the action as a matter of laches. While pretrial discovery proceedings were still under way, however, this Court announced its decision in *Rodrigue* v. *Aetna Casualty & Surety Co.*, 395 U. S. 352. That decision entirely changed the complexion of this case. For it established that the Lands Act does *not* make admiralty law applicable to actions such as this one. Relying on *Rodrigue,* the District Court held that Louisiana's one-year limitation on personal injury actions, rather than the admiralty doctrine of laches, must govern this case. It concluded, therefore, that the respondent's action was time barred and granted summary judgment for the petitioner.[2]

On appeal, the respondent argued that *Rodrigue* should not be applied retroactively to bar actions filed before the date of its announcement.[3] But the Court of Appeals declined to reach that question. Instead, it held that the interpretation of the Lands Act in *Rodrigue* does not compel application of the state statute of limitations or prevent application of the admiralty doctrine of laches. It concluded that the doctrine of laches should have been applied by the District Court and, therefore, reversed that court's judgment and remanded the case for trial. 430 F. 2d 27. We granted certiorari to consider the Court of Appeals' construction of the Lands

---

[1] See *infra,* at 107.

[2] The decision of the District Court is unreported (ED La., Civil Action No. 68–19D).

[3] The respondent has made the same argument to this Court.

Act and of *Rodrigue.* 402 U. S. 942. We hold that the Lands Act, as interpreted in *Rodrigue,* requires that the state statute of limitations be applied to personal injury actions. We affirm the judgment of the Court of Appeals, however, on the ground that *Rodrigue* should not be invoked to require application of the Louisiana time limitation retroactively to this case.

## I

The Lands Act makes the Outer Continental Shelf, including fixed structures thereon, an area of exclusive federal jurisdiction, 43 U. S. C. § 1333 (a)(1). The Act extends the laws of the United States to this area, 43 U. S. C. § 1333 (a)(1), and provides that the laws of the adjacent State shall also apply "[t]o the extent that they are applicable and not inconsistent" with applicable federal laws, 43 U. S. C. § 1333 (a)(2).[4] To the extent

---

[4] The full text of § 1333 (a)(1) and § 1333 (a)(2) reads:

"(a) (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands and fixed structures which may be erected thereon for the purpose of exploring for, developing, removing, and transporting resources therefrom, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: *Provided, however,* That mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter.

"(2) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State as of August 7, 1953 are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending

that a comprehensive body of federal law is applicable under § 1333 (a)(1), state law "inconsistent" with that law would be inapplicable under § 1333 (a)(2).

In *Rodrigue,* we clarified the scope of application of federal law and state law under § 1333 (a)(1) and § 1333 (a)(2). By rejecting the view that comprehensive admiralty law remedies apply under § 1333 (a)(1), we recognized that there exists a substantial "gap" in federal law. Thus, state law remedies are not "inconsistent" with applicable federal law. Accordingly, we held that, in order to provide a remedy for wrongful death, the "gap" must be filled with the applicable body of state law under § 1333 (a)(2).

The Court of Appeals acknowledged that *Rodrigue* clearly establishes that the remedy for personal injury, as for wrongful death, cannot be derived from admiralty law but must be governed by the law of the adjacent State, Louisiana. But the court held that Louisiana's time limitation on personal injury actions need not be applied with the substantive remedy. It supported this holding by reference to the terms of § 1333 (a)(2) that limit the application of state law under the Lands Act. The Louisiana time limitation, the Court of Appeals reasoned, is not "applicable" of its own force and is "inconsistent" with the admiralty doctrine of laches. The court held that, despite the holding in *Rodrigue,* the laches doctrine is applicable as a matter of federal common law. We must disagree.

The Court of Appeals did not suggest that state statutes of limitations are *per se* inapplicable under § 1333 (a)(2). Rather, it focused on the peculiar nature of

---

seaward and defining each such area. All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States. State taxation laws shall not apply to the outer Continental Shelf."

the Louisiana time limitation on personal injury actions found in Art. 3536, La. Civ. Code Ann. Article 3536 provides that personal injury actions shall be "prescribed" by one year. The Court of Appeals attached much significance to the fact that Art. 3536 "prescribes," rather than "perempts," such actions. Under Louisiana law, "prescription," unlike "peremption," bars the remedy but does not formally extinguish the right to recovery. See *Page* v. *Cameron Iron Works,* 259 F. 2d 420, 422–424; *Istre* v. *Diamond M. Drilling Co.,* 226 So. 2d 779, 794–795 (La. App.); *Succession of Pizzillo,* 223 La. 328, 335, 65 So. 2d 783, 786. This characterization has importance under principles of the conflict of laws. It has been held, as a matter of Louisiana conflicts law, that mere "prescriptive" time limitations are not binding outside their own forum. See *Fidelity & Casualty Co.* v. *C/B Mr. Kim,* 345 F. 2d 45, 50; *Kozan* v. *Comstock,* 270 F. 2d 839, 841; *Istre* v. *Diamond M. Drilling Co., supra,* at 795. Reasoning from this principle of conflicts law, the Court of Appeals concluded that the "prescriptive" limitation is not "applicable" in a federal court adjudicating a claim under the Lands Act.

We hold, however, that the "prescriptive" nature of Art. 3536 does not undercut its applicability under the Lands Act. Under § 1333 (a)(2) of the Act, "[s]tate law bec[omes] federal law federally enforced." *Rodrigue* v. *Aetna Casualty & Surety Co., supra,* at 365. It was the intent of Congress, expressed in the Senate Committee Report, in the Conference Report, and on the floor of the Senate, that state laws be "adopted" or "enacted" *as federal law.* See *id.,* at 357–358. Thus a federal court applying Louisiana law under § 1333 (a)(2) of the Lands Act is applying it as federal law—as the law of the federal forum. Since the federal court is not, then, applying the law of *another* forum in

the usual sense, ordinary conflict of laws principles have no relevance. Article 3536 is "applicable" in federal court under the Lands Act just as it would be applicable in a Louisiana court.[5]

The policies underlying the federal absorption of state law in the Lands Act make this result particularly obvious. As we pointed out in *Rodrigue,* Congress recognized that " 'the Federal Code was never designed to be a complete body of law in and of itself' " and thus that a comprehensive body of state law was needed. *Id.,* at 358, 361. Congress also recognized that the "special relationship between the men working on these artificial islands and the adjacent shore to which they commute" favored application of state law with which these men and their attorneys would be familiar. *Id.,* at 365; see *id.,* at 363. If Congress' goal was to provide a comprehensive and familiar body of law, it would defeat that goal to apply only certain aspects of a state personal injury remedy in federal court. A state time limitation upon a remedy is coordinated with the substance of the remedy and is no less applicable under the Lands Act.[6]

The application of Louisiana's Art. 3536 is, of course, subject to the absence of "inconsistent" and applicable federal law. The Court of Appeals acknowledged that *Rodrigue* forecloses direct applicability of the "inconsistent" laches doctrine through admiralty law. But, by applying laches as a matter of federal common law, it

---

[5] This is not to imply that a federal court adjudicating a claim under state law as absorbed in the Lands Act must function as it would in a diversity case. See *Erie R. Co.* v. *Tompkins,* 304 U. S. 64; *Guaranty Trust Co.* v. *York,* 326 U. S. 99; *Levinson* v. *Deupree,* 345 U. S. 648, 651. We hold only that the state statute of limitations is part of the law to be applied in federal court as it would be part of the law to be applied in a state court.

[6] Here we are not dealing with mere "housekeeping rules" embodied in state law. Cf. *Hanna* v. *Plumer,* 380 U. S. 460, 473.

sought to reintroduce the doctrine through a back door.[7] This approach subverts the congressional intent documented in *Rodrigue, id.,* at 359–366, that admiralty doctrines should *not* apply under the Lands Act.

Moreover, the Court of Appeals' approach amounts to an inappropriate creation of federal common law. Even when a federal statute creates a wholly federal right but specifies no particular statute of limitations to govern actions under the right, the general rule is to apply the state statute of limitations for analogous types of actions. See *Auto Workers* v. *Hoosier Corp.,* 383 U. S. 696; *Cope* v. *Anderson,* 331 U. S. 461; *Campbell* v. *Haverhill,* 155 U. S. 610; Note, Federal Statutes Without Limitations Provisions, 53 Col. L. Rev. 68 (1953). A special federal statute of limitations is created, as a matter of federal common law, only when the need for uniformity is particularly great or when the nature of the federal right demands a particular sort of statute of limitations. See *Holmberg* v. *Armbrecht,* 327 U. S. 392; *McAllister* v. *Magnolia Petroleum Co.,* 357 U. S. 221. But, under the Lands Act, there is not even such limited freedom to create a federal statute of limitations, for Congress specified that a comprehensive body of state law should be adopted by the federal courts in the absence of existing federal law. Congress specifically rejected national uniformity and specifically provided for the application of state remedies which demand state, not federal, statutes of limitation. Thus, Congress made clear provision for filling in the "gaps" in federal law; it did not intend that federal

---

[7] The Court of Appeals justified its creation of federal common law in this instance by suggesting that personal injury actions under the Lands Act are in a "quasi maritime area which is traditionally imbued with the laches doctrine and which presents a strong federal urge toward uniformity." 430 F. 2d, at 32.

courts fill in those "gaps" themselves by creating new federal common law.[8]

## II

Although we hold that Louisiana's one-year statute of limitations must be applied under the Lands Act as interpreted in *Rodrigue,* we do not blind ourselves to the fact that this is, in relevant respect, a pre-*Rodrigue* case. The respondent's injury occurred more than three years before the announcement of our decision in *Rodrigue.* He instituted the present lawsuit more than one year before *Rodrigue.* Yet, if the Louisiana statute of limitations controls in this case, his action was time barred more than two years before *Rodrigue.* In these circumstances, we must consider the respondent's argument that the state statute of limitations should be given nonretroactive application under *Rodrigue.*

In recent years, the nonretroactive application of judicial decisions has been most conspicuously considered

---

[8] Contrary to the suggestion by MR. JUSTICE DOUGLAS, our holding today is consonant with *Levinson* v. *Deupree, supra,* n. 5. Since *Levinson* involved a federal court's obligation to adopt state procedural rules in an admiralty action, it has very limited relevance to the instant case, which involves an action under a statute which ousts admiralty law and specifically directs that state law shall be adopted as federal law. Moreover, *Levinson* held only that state "procedural niceties relating to amendments of pleadings" need not be applied by federal admiralty courts, and the opinion emphasized that it was not dealing with an important part of the state action, such as a statute of limitations. 345 U. S., at 651–652. As pointed out above, our holding today does not extend to such state "housekeeping rules." See n. 6, *supra.*

*Richards* v. *United States,* 369 U. S. 1, also referred to by MR. JUSTICE DOUGLAS, held that, under the Federal Tort Claims Act, a federal court must apply "the whole law of the State where the act or omission occurred." *Id.,* at 11. Insofar as *Richards* bears on the present case, it supports our holding that federal courts should not create interstitial federal common law when the Congress has directed that a whole body of state law shall apply.

in the area of the criminal process. *E. g., Mackey* v. *United States,* 401 U. S. 667; *Hill* v. *California,* 401 U. S. 797; *Desist* v. *United States,* 394 U. S. 244; *Linkletter* v. *Walker,* 381 U. S. 618.  But the problem is by no means limited to that area.  The earliest instances of nonretroactivity in the decisions of this Court—more than a century ago—came in cases of nonconstitutional, noncriminal state law. *E. g., Gelpcke* v. *City of Dubuque,* 1 Wall. 175; *Havemeyer* v. *Iowa County,* 3 Wall. 294; *Railroad Co.* v. *McClure,* 10 Wall. 511.[9]  It was in a noncriminal case that we first held that a state court may apply its decisions prospectively. *Great Northern R. Co.* v. *Sunburst Oil & Refining Co.,* 287 U. S. 358.  And, in the last few decades, we have recognized the doctrine of nonretroactivity outside the criminal area many times, in both constitutional and nonconstitutional cases. *Cipriano* v. *City of Houma,* 395 U. S. 701; *Allen* v. *State Board of Elections,* 393 U. S. 544; *Hanover Shoe* v. *United Shoe Machinery Corp.,* 392 U. S. 481; *Simpson* v. *Union Oil Co.,* 377 U. S. 13; *England* v. *State Board of Medical Examiners,* 375 U. S. 411; *Chicot County Drainage Dist.* v. *Baxter State Bank,* 308 U. S. 371.

In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, see, *e. g., Hanover Shoe* v. *United Shoe Machinery Corp., supra,* at 496, or by deciding an issue of first impression whose resolution was not clearly foreshadowed, see, *e. g., Allen* v. *State Board of Elections, supra,* at 572.  Second, it has been stressed that "we must . . . weigh the merits

---

[9] These cases were decided in the era before *Erie R. Co.* v. *Tompkins, supra,* n. 5.  The first case involving nonretroactive application of state law concerned interpretation of the Mississippi Constitution. *Rowan* v. *Runnels,* 5 How. 134.

and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." *Linkletter* v. *Walker, supra,* at 629. Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity." *Cipriano* v. *City of Houma, supra,* at 706.

Upon consideration of each of these factors, we conclude that the Louisiana one-year statute of limitations should not be applied retroactively in the present case. *Rodrigue* was not only a case of first impression in this Court under the Lands Act, but it also effectively overruled a long line of decisions by the Court of Appeals for the Fifth Circuit holding that admiralty law, including the doctrine of laches, applies through the Lands Act. See, *e. g., Pure Oil Co.* v. *Snipes,* 293 F. 2d 60; *Movible Offshore Co.* v. *Ousley,* 346 F. 2d 870; *Loffland Bros. Co.* v. *Roberts,* 386 F. 2d 540. When the respondent was injured, for the next two years until he instituted his lawsuit, and for the ensuing year of pretrial proceedings, these Court of Appeals decisions represented the law governing his case. It cannot be assumed that he did or could foresee that this consistent interpretation of the Lands Act would be overturned. The most he could do was to rely on the law as it then was. "We should not indulge in the fiction that the law now announced has always been the law and, therefore, that those who did not avail themselves of it waived their rights." *Griffin* v. *Illinois,* 351 U. S. 12, 26 (Frankfurter, J., concurring in judgment).

To hold that the respondent's lawsuit is retroactively time barred would be anomalous indeed. A primary purpose underlying the absorption of state law as federal

law in the Lands Act was to aid injured employees by affording them comprehensive and familiar remedies. *Rodrigue* v. *Aetna Casualty & Surety Co., supra,* at 361, 365. Yet retroactive application of the Louisiana statute of limitations to this case would deprive the respondent of any remedy whatsoever on the basis of superseding legal doctrine that was quite unforeseeable. To abruptly terminate this lawsuit that has proceeded through lengthy and, no doubt, costly discovery stages for a year would surely be inimical to the beneficent purpose of the Congress.

It would also produce the most "substantial inequitable results," *Cipriano* v. *City of Houma, supra,* at 706, to hold that the respondent "slept on his rights" at a time when he could not have known the time limitation that the law imposed upon him. In *Cipriano* v. *City of Houma, supra,* we invoked the doctrine of nonretroactive application to protect property interests of "cities, bondholders, and others connected with municipal utilities"; and, in *Allen* v. *State Board of Elections, supra,* we invoked the doctrine to protect elections held under possibly discriminatory voting laws. Certainly, the respondent's potential redress for his allegedly serious injury— an injury that may significantly undercut his future earning power—is entitled to similar protection. As in *England* v. *State Board of Medical Examiners, supra,* nonretroactive application here simply preserves his right to a day in court.[10]

---

[10] We do *not* hold here that *Rodrigue,* in its entirety, must be applied nonretroactively. Rather, we hold only that state statutes of limitations, applicable under *Rodrigue*'s interpretation of the Lands Act, should not be applied retroactively. Retroactive application of all state substantive remedies under *Rodrigue* would not work a comparable hardship or be so inconsistent with the purpose of the Lands Act.

Both a devotion to the underlying purpose of the Lands Act's absorption of state law and a weighing of the equities requires nonretroactive application of the state statute of limitations here. Accordingly, although holding that the opinion of the Court of Appeals reflects a misapprehension of *Rodrigue,* we affirm its judgment remanding this case to the trial court.

*It is so ordered.*

MR. JUSTICE DOUGLAS.

*Rodrigue* v. *Aetna Casualty & Surety Co.,* 395 U. S. 352, does not, with all respect, require reversal in this case. Accordingly, I would affirm the judgment of the Court of Appeals without reaching the question of the retroactivity of *Rodrigue.*

*Rodrigue,* like the present case, arose under the Outer Continental Shelf Lands Act, 67 Stat. 462, 43 U. S. C. § 1331 *et seq.* That Act created a federal cause of action for offshore injuries enforceable in the federal courts, but made state laws applicable. 43 U. S. C. § 1333 (a)(2).

In *Rodrigue,* La. Civ. Code Ann., Art. 2315 (1970) was relevant, which provides in part: "The right to recover all other damages caused by an offense or quasi offense, if the injured person dies, shall survive for a period of one year from the death of the deceased . . . ."

In the present case Art. 3536 of the Code is applicable and it reads: "The following actions are also prescribed by one year:

"That for injurious words, whether verbal or written, and that for damages caused by animals, or resulting from offenses or quasi offenses."

The latter limitation is "prescriptive" only, *i. e.,* that while the Louisiana remedy is barred, the right is not. Under Art. 3536, the limitation runs only to the *remedy*

and would not be applicable in another forum applying the substantive right. *Istre* v. *Diamond M. Drilling Co.,* 226 So. 2d 779, 794–799 (La. App. 1969). Respondent, therefore, argues that the federal doctrine of laches is the only limitation upon his right of recovery and that it is inapplicable where, as here, there is no prejudice to the defendant and any delay in filing the lawsuit was reasonably excusable. See, *e. g., Akers* v. *State Marine Lines,* 344 F. 2d 217.

The Louisiana courts consider the distinction between *peremptive* and *prescriptive* limitations important;[1] and by reason of the federal statute, making Louisiana law applicable, federal courts are bound by the distinction. *Richards* v. *United States,* 369 U. S. 1. As stated in *Rodrigue* the federal Act "supplemented gaps in the federal law with state law through the 'adoption of State law as the law of the United States.'" 395 U. S., at 357.

In *Rodrigue*—an action for wrongful death—the right is extinguished, if the action for recovery is not brought within a year of the death. *Kenney* v. *Trinidad Corp.,* 349 F. 2d 832; *Mejia* v. *United States,* 152 F. 2d 686. Under Art. 3536—which governs here—Louisiana law holds that it is merely a "procedural restraint which bars the remedy, but does not extinguish the right." *Fidelity & Casualty Co.* v. *C/B Mr. Kim,* 345 F. 2d 45, 50 (CA5 1965). See also *Page* v. *Cameron Iron Works,* 259 F. 2d 420, 422 (CA5 1958); *Jackson* v. *Continental*

---

[1] *Guillory* v. *Avoyelles R. Co.,* 104 La. 11, 15, 28 So. 899, 901 (1900):

"When a statute creates a right of action and stipulates the delay within which that right is to be executed, the delay thus fixed is not properly speaking one of *prescription,* but is one of *peremption.*

"Statutes of prescription simply bar the remedy. Statutes of peremption destroy the cause of action itself. That is to say, after the limit of time expires the cause of action no longer exists; it is lost."

*Southern Lines,* 172 F. Supp. 809 (WD Ark. 1959); *Succession of Pizzillo,* 223 La. 328, 65 So. 2d 783 (1953); *Devoe & Raynolds Co.* v. *Robinson,* 109 So. 2d 226 (La. App. 1959).

A district court, sitting in diversity jurisdiction in Arkansas, applied these principles of Louisiana law and held—properly in my mind—that Art. 3536 did not bar an action filed more than one year after the injury complained of. *Jackson* v. *Continental Southern Lines, supra.* See also *Page* v. *Cameron Iron Works, supra.* That decision is in perfect harmony with long-established rules of conflict of laws.[2] A different result

---

[2] G. Stumberg, Principles of Conflict of Laws 146–147 (3d ed. 1963):

"The traditional reaction in Conflict of Laws . . . has been that ordinarily limitation is procedural. This view was taken by the Dutch jurists, and where the question arises out of a general statute, it is the view generally accepted by Anglo-American courts. The result is that in the absence of a statute to the contrary in most jurisdictions, when the claim is based upon foreign facts, even though the foreign period of limitation has not run, the plaintiff may not recover if the time allowed for suit at the forum has expired. Conversely, if the foreign period has expired, suit may nevertheless be brought at the forum if the time specified there has not run." (Footnotes omitted.)

Accord, Restatement of Conflict of Laws §§ 603–604 (1934); Restatement (Second) of Conflict of Laws §§ 142, 143 (1971); 3 J. Beale, Conflict of Laws § 584.1 (1935); B. Currie, Conflict of Laws 232–234, 255 (1963); A. Ehrenzweig, Conflict of Laws 428–436 (1962); H. Goodrich, Conflict of Laws 267 (4th ed. 1964); Ailes, Limitation of Actions and the Conflict of Laws, 31 Mich. L. Rev. 474 (1933); Comment, The Statute of Limitations and the Conflict of Laws, 28 Yale L. J. 492 (1919).

While still sitting on the Court of Appeals for the Second Circuit, Mr. Justice Harlan said:

"In actions where the rights of the parties are grounded upon the law of jurisdictions other than the forum, it is a well-settled conflict-of-laws rule that the forum will apply the foreign substantive law,

should not obtain here where federal jurisdiction, 43 U. S. C. § 1333, flows from a head other than diversity.

Apart from traditional conflict of laws is the congressional mandate to apply state laws to these federal causes of action. If we are faithfully to apply the state law of Louisiana we would apply here not the Louisiana *peremption* rule applied in *Rodrigue* but the Louisiana *prescriptive* rule applicable to the instant personal injury case.

Today's decision conflicts with *Levinson* v. *Deupree*, 345 U. S. 648, where the District Court was enforcing in admiralty a state cause of action for wrongful death. Although procedural irregularities in the appointment of the administrator would have barred—under the state statute of limitations—an action in state court, we held that federal courts were free to formulate their own procedural rules. If we were to follow *Levinson,* we would not bind federal courts to state rules of procedure designed to have no application beyond the state forum for which they were created.[3] Cf. *Byrd* v. *Blue Ridge*

---

but will follow its own rules of procedure." *Bournias* v. *Atlantic Maritime Co.,* 220 F. 2d 152, 154 (CA2 1955).

Mr. Justice Harlan went on to hold that a Panamanian statute of limitations was not applicable where a Panamanian statutory right was being enforced under the admiralty jurisdiction of the Federal District Court.

[3] The majority supports its limitation on actions by saying that "we are not dealing with mere 'housekeeping rules' embodied in state law. Cf. *Hanna* v. *Plumer,* 380 U. S. 460, 473." *Ante,* at 103 n. 6. This conclusion, however, is directly contrary to the characterization given the prescriptive limitation by Louisiana courts:

". . . It is conceded by the five defendants-appellees that had plaintiff filed this suit in the federal court, the doctrine of laches would apply. The cases cited by plaintiff . . . were filed in the federal forum and are distinguished on this basis.

"But plaintiff chose the State forum. Plaintiff may have preferred some procedural advantages afforded in the State court, such

*Electric Cooperative,* 356 U. S. 525, 533–539; *Angel* v. *Bullington,* 330 U. S. 183, 192; *Atkins* v. *Schmutz Manufacturing Co.,* 435 F. 2d 527 (CA4 1970); Note, 71 Col. L. Rev. 865 (1971).

Today's decision also conflicts with our decision in *Richards* v. *United States, supra.* There, the Federal Tort Claims Act referred us to the local law for a rule of decision, just as *Rodrigue* and the Lands Act do in the present case. We concluded that the Act "require[d] application of the whole law of the State where the act or omission occurred," 369 U. S., at 11, including its conflict of laws decision.[4] If we were to follow *Richards* and *Rodrigue* in the present case, we would apply Louisiana's

---

as: agreement of only nine of twelve jurors needed; ability to call under cross-examination any employee of a party as opposed to the federal rule wherein the right to call witnesses under cross-examination is limited to executive or top supervisory personnel; no procedural vehicle provided for directed verdict or judgment n. o. v. in State court; or shorter delay in State court between filing petition and trial. Having chosen the State forum, he is bound by State procedural rules. The argument that uniformity requires us to import the Federal procedural law of laches rather than use the Louisiana procedural law of prescription, is unacceptable. If we adopt the federal procedural rule in this instance, it would logically follow that more Louisiana procedural rules will, for the same reason, be abandoned in the future. We hold that our State courts are bound to apply State procedural rules." *Istre* v. *Diamond M. Drilling Co.,* 226 So. 2d 779, 794.

The court then concluded, "The applicable Louisiana prescription statute, LSA–C.C. Art. 3536, is procedural." *Id.,* at 794–795.

[4] The majority would limit *Richards'* reasoning "that federal courts should not create interstitial federal common law when the Congress has directed that a whole body of state law shall apply." *Ante,* at 105 n. 8. It is precisely because we must apply the "whole body" of state law, however, that we should apply the Louisiana interpretation of that law and not use the prescriptive rule to bar an action in a federal forum. H. Hart & H. Wechsler, The Federal Courts and the Federal System 456–457 (1953).

prescriptive rule as it has been construed by Louisiana courts and not use it to bar an action in a different forum.

For in that other forum—here the federal district court—Louisiana law allows the federal court, consistently with conflict of laws, to apply a different limitation than Louisiana would apply in her own courts.

In *Rodrigue,* we said:

"The purpose of the Lands Act was to define a body of law applicable to the seabed, the subsoil, and the fixed structures such as those in question here on the outer Continental Shelf. That this law was to be federal law of the United States, applying state law only as federal law and then only when not inconsistent with applicable federal law, is made clear by the language of the Act." 395 U. S., at 355–356.

We then concluded: "It is evident from this that federal law is 'exclusive' in its regulation of this area, and that state law is adopted only as surrogate federal law." *Id.,* at 357.

Since the federal court is not a Louisiana forum,[5] the Louisiana law of *prescription* permits enforcement of this claim after Louisiana's one-year statute has run.[6] Therefore, if we are to be faithful to the federal scheme we must apply Louisiana law; and Louisiana law would

[5] The majority acknowledges that the federal court still retains its identity as a federal forum when it indicates that it is not to "function as it would in a diversity case," *ante,* at 103 n. 5, and that only certain state rules are adopted, *ante,* at 103 n. 6.

[6] *O'Sullivan* v. *Felix,* 233 U. S. 318, does not require a contrary result because there we considered only whether Art. 3536 could be applied to a federal action in a federal court and not how it should be applied. Petitioner conceded that his action was barred if Art. 3536 applied and "the sole question pressed by counsel and which we [were] called upon to decide [was] the application of the state statute to the conceded [federal] cause of action." *Id.,* at 321.

not apply *Rodrigue* in a personal injury case where the suit is not brought in a Louisiana forum.

The Court of Appeals, speaking through our leading admiralty authority, Judge Brown, so held and went on to rule that in harmony with Louisiana's *prescriptive* rule this personal injury suit was not barred under the laches doctrine familiar to maritime law.

This is not a stale claim and its assertion after the one-year period ran was not prejudicial; no prejudice was indeed pleaded. Cf. *Holmberg* v. *Armbrecht,* 327 U. S. 392.

One who reads this record will be impressed with the grave injustice of applying the Louisiana one-year statute as if it were *peremptive,* rather than *prescriptive.* Death comes with a finality lacking in some personal injury cases; and the rigid rule applied in *Rodrigue* can do no injustice. But personal injuries are often lingering and one may not know for months whether he is partially or permanently crippled, whether he must be retrained for wholly different work, and so on. In this case it took some months after the injury for respondent (1) to realize that he could not return to his old work, and (2) to discover the kind of work he could do.

If we followed Louisiana law, as Congress directed, we would affirm the judgment of the Court of Appeals, reflecting as it does good law and a measure of justice not always allowable when the rigidity of *Rodrigue* governs a case.