**Fred HARRIS, Plaintiff,**

v.

**E.F. HAUSERMAN COMPANY, et al., Defendants.**

**Civ. A. No. C82–898.**

United States District Court,
N.D. Ohio, E.D.

Dec. 20, 1983.

Nancy L. Olson, Cleveland, Ohio, for plaintiff.

Eugene Schwartz, Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Fred Harris asserts that his § 301 claim against his Union should be reinstated in light of the Supreme Court's holding that a six month statute of limitations should apply to all § 301 suits. Harris asks this Court to reconsider its earlier Order dismissing Harris' claims against the Union as time-barred. Upon consideration, the Motion is denied.

## FACTS

On January 13, 1983, this Court applied the rule of *United Parcel Service v. Mitchell,* 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), and dismissed plaintiff Harris' complaint against the defendant Furniture Workers of America, Local No. 450 ("Union") for failure to file within Ohio's ninety day statute of limitations governing the vacation of an arbitration award. On June 8, 1983, the Supreme Court reversed its holding in *Mitchell, supra* and ruled that the six month statute of limitations provided in § 10(b) of the National Labor Relations Act should apply to § 301 suits, rather than the various state statutes of limitation which were held applicable under *Mitchell. DelCostello v. International Brotherhood of Teamsters, et al.,* —— U.S. ——, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Harris contends that his suit was filed within the six month statute of limitations, and his claim against the Union should therefore be reinstated. Only the Union moved to dismiss under *Mitchell, supra;* Harris' action is still pending against his employer, E.F. Hauserman Co.

## CONCLUSIONS OF LAW

*I. Applicability of DelCostello*

■ Generally decisions are to be applied retroactively unless non-retroactivity is indicated because: 1) the overruling decision establishes a new rule of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; 2) the policy underlying the new rule is furthered by non-retroactive application; and 3) substantial inequity will result from retroactive application. *Chevron Oil Company v. Hu-*

*son,* 404 U.S. 97, 107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).

## A. *New Precedent*

■ The Supreme Court's decision to adopt the six month period in § 10(b) is a new rule of law which, by the Supreme Court's own admission, overrules precedent:

> ... The analogies suggested in *Mitchell* both suffer from flaws, not only of legal substance, but more important, of practical application in view of the policies of federal labor law and the practicalities of hybrid § 301/fair representation litigation.

*DelCostello, supra* 103 S.Ct. at 2291. Although the Supreme Court implies that its decision was not foreshadowed because its earlier holding in *Mitchell* was limited:

> ... [W]e expressly limited our consideration to a choice between two *state* statutes of limitations; we did not address the contention that we should instead borrow a *federal* statute of limitations; namely § 10(b) ...

(*Id.* 103 S.Ct. at 2285), Justice Stewart's well-reasoned concurrence in *Mitchell* advocating adoption of § 10(b) suggests otherwise. Arguably, the majority's unwillingness to join in Justice Stewart's opinion could be interpreted as disposing of the question. On the other hand, the logic of Stewart's argument became increasingly apparent as courts wrestled with the impracticalities of *Mitchell's* majority holding.

## B. *Policy*

The policy behind the *DelCostello* decision was to provide aggrieved union members a better chance to obtain redress:

> ... the employee will often be unsophisticated in collective-bargaining matters, ... [y]et state arbitration statutes typically provide very short times in which to sue for vacation of arbitration awards.... We conclude that state limitations periods for vacating arbitration awards fail to provide an aggrieved employee with a satisfactory opportunity to

vindicate his rights under § 301 and the fair representation doctrine.

*DelCostello* 103 S.Ct. at 2291. The effect of the *DelCostello* decision is to lengthen the union member's time for filing from the ninety day period, effective in most states, to the more generous six month period. *See, DelCostello, supra* 103 S.Ct. at 2291 n. 15. (The majority of states have a ninety day period; only two have longer periods.) The Supreme Court, clearly, was aware of this effect to the point of being motivated by it: "Concededly, the very brevity of New York's 90-day arbitration limitations period was a major factor why, in *Mitchell,* we preferred it to the six-year statute for breach of contract, but it does not follow that because six years is too long, 90 days is long enough." *Id.* 103 S.Ct. at 2291. (Citations omitted). By designating a uniform limitations period for all suits in every state, the decision also comports with efforts to establish a national federal labor policy.

## C. *Equity*

In light of this policy of lengthening the statute of limitations to afford union employees more opportunities for relief, it is inequitable *not* to apply *DelCostello* retroactively. The change in law does not work a hardship in this District, where persons who relied on *Mitchell* and would have been required to file within Ohio's ninety-day limitation period, will not have their rights jeopardized by retroactive application of the six-month statute of limitations. *DelCostello's* purposes can best be achieved by retroactive application. Accordingly, the six-month statute of limitations in § 10(b) of the Labor Relations Act applies to Harris.

The inquiry does not end there, however. Under Ohio's ninety-day statute of limitations, it was clear that Harris had not met the filing deadline. Under a six-month limitation, the question is a closer one.

## II. *Harris' Affidavit*

■ In his original complaint, filed February 10, 1983, Harris alleged that he was discharged on July 16, 1981, and he grieved

his discharge by way of a grievance dated July 17, 1981. In support of his recent motion, Harris submits an affidavit claiming his last written notice from the Union was dated July 30, 1981, but that "to the best of his knowledge" it was not until "sometime in the third week of August 1981" that the Chief Shop Steward orally notified him of the Union's decision not to demand arbitration. This information was not contained in the original complaint, and its presentation in the current context seems conveniently contrived to fit the *DelCostello* holding's six-month statute of limitations. Harris qualifies the most critical portion of his affidavit, (specifying the date of the Union's final decision), with the unsettling phrase "to the best of his knowledge". He does not state where the conversation with his shop steward took place, nor does he name the individual. In contrast, the Union offers a very specific, unqualified affidavit by Ronald Sawyer, Chief Steward for the Union, who states that the conversation took place on July 31, 1981 in the Chief Steward's office. On its face, Ronald Sawyer's affidavit is much more credible than Fred Harris'. Harris' qualified averment combined with his failure to allude to any of these dates in his original or amended complaints, or in his memorandum in opposition to the Union's motion to dismiss for failure to comply with the statute of limitations undermines the credibility of his affidavit. Therefore, this Court concludes that even under *DelCostello's* more lenient statute of limitations, Harris failed to timely file.

### III. Relation Back of the Amended Complaint

Even viewing the facts in a light most favorable to Harris [1] and accepting Harris' incredible affidavit as true, his claim cannot be reinstated. The history of this case, as revealed by the pleadings, is a comedy of errors.

Harris' suit, which named only his employer as a defendant, and was grounded in

federal law, was initially filed in the Court of Common Pleas for Cuyahoga County. It was removed by the company to federal court. The company later filed a motion to join the Union as a party, and on May 14, 1982, Harris filed a memorandum opposing joinder which stated in part:

Plaintiff has chosen not to name his union, Local 450, as a Defendant in the instant lawsuit and the Defendant Company is challenging that decision by its motion. However, ... there is no justification for requiring joinder of the union as a party....

On June 25, 1982, Harris moved to amend his complaint again stating "Defendant has chosen not to name his union Local 450, as a defendant ...". On August 30, 1982, Harris filed a Second Amended Complaint, naming his union as a defendant. Thus, it was not until August 30, 1982, more than a year after his discharge, that Harris filed suit against his union. Harris' claim against his union, therefore, can only be considered timely filed if his Second Amended Complaint relates back to the filing date of the original complaint.

Fed.R.Civ.P. 15(c) governs the relation back of amendments. The rule is addressed, primarily, to amendments which attempt to change defendants, particularly when one party is mistakenly named instead of another. *See,* Committee Comment to the 1966 amendment. In the instant case, Harris did not *change* parties; he *added* a party that he had twice declared he did not want to sue. Clearly, had Harris attempted to file a new suit against the Union in August of 1982, it would have been time-barred under *Mitchell* and even under the more lenient, but yet-to-be-decided *DelCostello*. Applying Rule 15, an amendment can relate back to the original pleading if the party to be affected:

1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and 2) knew or should have known that, but for a *mistake* concern-

1. The standard governing motions for summary judgment, (*Adickes v. S.H. Kress and Co.,* 398

U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970)) which this motion is not.

ing the identity of the proper party, the action would have been brought against him.

Clearly, Harris' decision not to name the Union as a defendant was not a mistake. His repeated protestations to the contrary confirm the conscious and deliberate nature of this decision. If the Union did receive notice of the action, it certainly would have been justified in relying on Harris' double declaration that he did not choose to sue the Union, thereby obviating the need for the Union to maintain records relating to his apparently abandoned claim. By the time Harris changed his mind, too much time had elapsed to permit him to proceed against the Union. The Union's Motion to Dismiss was well-taken even under the best of Harris' circumstances. Accordingly, his Motion for Relief from Order must be denied.

IT IS SO ORDERED.