**DORCHESTER GAS PRODUCING COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 87–4010.

United States Court of Appeals, Fifth Circuit.

July 5, 1988.

---

Sherman S. Poland, Ross, Marsh & Forster, Washington, D.C., for Dorchester Gas Producing Co.,

Joseph S. Davies, Jerome M. Feit, Sol. F.E.R.C., Joanne Leveque, Washington, D.C., for F.E.R.C.

Jane DiRenzo Segraves, Paul E. Goldstein, Philip R. Telleen, Lombard, Ill., for Natural Gas Pipeline Co. of America.

Before GARZA, JOHNSON and HIGGINBOTHAM, Circuit Judges.

GARZA, Circuit Judge:

The petitioner challenges three orders of the Federal Energy Regulatory Commission (Commission). Finding that the Commission properly determined that it would be inequitable to make the effect of its September 19, 1985 order retroactive, we affirm.

## I. Facts and Proceedings

Since 1946, Dorchester Gas Producing Company (Dorchester) has gathered gas at its Hooker Plant in Oklahoma. Dorchester sold the gas at its wellhead in this area to Natural Gas Pipeline Company of America (Natural). In 1959, Dorchester entered into a contract with Natural to take delivery of Natural's gas, gather and process the gas, and deliver the residue gas to Natural at the Hooker Plant. In 1969, the Federal Power Commission issued a certificate authorizing Dorchester's gathering operations on behalf of Natural.

In 1978, the parties amended their 1959 agreement to require Natural to pay increased gathering charges of five cents per Mcf in Dorchester's low pressure system, effective March 1, 1973, and two cents per Mcf in Dorchester's high pressure system, effective January 1, 1977. Natural was not required to pay the increased rates until the Commission approved them. In September of 1978, Dorchester filed a petition for a declaratory order or for alternative relief with the Commission, requesting that the Commission either declare Dorchester's gathering operations to be non-jurisdictional under section 1(b) of the Natural Gas Act or to approve the increased rates.

On October 10, 1978, the Commission rejected the rate increase filings without prejudice to its jurisdictional determination. For seven years it failed to act upon the jurisdictional issue despite Dorchester's attempts to expedite the action. Finally, on September 19, 1985, the Commission determined, based upon facts of operation that had pertained throughout, that Dorchester's operation constituted gathering that was exempt under section 1(b) of the Natural Gas Act. 32 FERC ¶ 61,409 (1985). Consequently, the Commission terminated

Dorchester's certificate and related rate schedule.

Natural commenced paying Dorchester for current gathering operations, but declined to pay Dorchester for gathering operations performed prior to the date of the Commission's order. Natural refused to pay the amended contract rates for the past period relying upon a footnote in the declaratory order of September 19, 1985, which provided:

> The services performed in the future by Dorchester on behalf of Natural are deemed prudent under the Commission's regulations. 18 C.F.R. ¶ 2.102 (1985). The flow-through of any payments made by Natural to Dorchester for such services would be subject to a prudency determination in an appropriate Natural rate proceeding.

Dorchester sought clarification of the Commission's order. Dorchester argued the language in the footnote had nothing to do with the jurisdictional determination, but related solely to the prudency standard to be applied in determining whether Natural would be permitted to pass-through the contract costs which it incurred. In its clarification order of July 2, 1986, the Commission concluded that its declaratory order was effective only as of the date of issuance, September 19, 1985, and until that time Dorchester's gathering operations were jurisdictional even though the Commission later had held them to be non-jurisdictional. 36 FERC § 61,049 (1986).

In ruling that its jurisdictional determination had no retroactive effect, the Commission did not base its decision upon a change in operations. Instead, it held that it would be inequitable to give retroactive effect on the basis of *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed. 2d 296 (1971). In rejecting Dorchester's contention, the Commission noted:

> The Commission finds that until the September 19, 1985 declaratory order was issued, Dorchester's facilities were operated under a certificate of public convenience and necessity issued in Docket No. CI70–36 and the rates charged for the services were covered by

Rate Schedule No. 9. This decision is consistent with standard Commission procedure. Rule 2007 of the Commission's Rules of Practice and Procedure provides that, unless otherwise ordered by the Commission, rules or orders are effective on the date of issuance. The Commission declines to make the September 19, 1985 order retroactively effective.

36 FERC § 61,049.

Dorchester filed for rehearing or, in the alternative, a petition that would have allowed it to maintain the higher rates provided for in the 1978 agreement. On November 10, and December 22, 1986, the Commission denied both requests. Dorchester petitioned this court for relief, complaining of the July 2, November 10, and December 22, 1986 orders.

## II. Discussion

There is no dispute that Dorchester's gathering facilities at the Hooker Plant are not subject to the Commission's jurisdiction under section 1(b) of the Natural Gas Act. *See Farmland Indus. Inc.,* 23 FERC ¶ 61,063 (1983). Further, the operations were conducted in the same manner in September of 1985 when the Commission held them to be non-jurisdictional, as they had been conducted in 1978 when Dorchester made its filing and in 1973 when Dorchester realigned its operations. Dorchester claims that because the Commission determined that it did not have jurisdiction over Dorchester's gathering operation based upon facts pertaining since March 1, 1973, the Commission was without authority to assert rate regulatory jurisdiction during that period.

The Commission correctly declined to make its jurisdictional determination retroactive. Retroactive application would have allowed Dorchester to collect from Natural certain contract rates which are greater than those permitted under Dorchester's rate schedule on file prior to September 19, 1985. Dorchester apparently requests that we overlook the fact that it submitted to the Commission's jurisdiction in 1969 when it filed an application for a certificate and

related rate schedules. The Federal Power Commission issued a certificate in this case and the parties relied on it.

Further, both Natural and Dorchester received benefits when they acted in accordance with the certificate. Dorchester received a financial benefit when it was issued a certificate in that Natural was required to pay Dorchester a one-quarter cent per Mcf increase in the charges for the gathering operations. Natural also acted on the Commission's jurisdiction when it sought and obtained an order directing Dorchester to resume its operations after a fire at the plant had suspended Dorchester's deliveries.

There are other reasons to support the Commission's conclusion that the effective date of its declaratory order is September 19, 1985. There is no provision in the statute or in the Commission's orders that requires the Commission to retroactively accept jurisdictional rates that exceed the standard just and reasonable ceilings of the Natural Gas Act. There is also a fundamental regulatory policy against retroactive rate-hiking. *See Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571, 578, 101 S.Ct. 2925, 2930, 69 L.Ed.2d 856 (1981). Pursuant to Rule 2007 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.2007(c)(1) (1985), unless otherwise ordered by the Commission, orders are effective upon the date of issuance.

Dorchester also complains that the Commission erred in its application of the *Chevron Oil Co. v. Huson* three-prong test. In that case the Supreme Court enunciated a standard for determining whether to apply a decision retroactively. 404 U.S. at 106, 92 S.Ct. at 355. The standard requires the balancing of three factors.

The first factor to be evaluated is whether the decision overruled past precedent or was one of first impression whose resolution was not clearly foreshadowed by prior events. Clearly, in this case there has been a supervening change in the law. The Commission's September 19, 1985 order departed from past administrative precedent. Thus, the first factor weighs in favor of non-retroactive application.

The second factor acknowledges the history, purpose, and effect of the new rule. It must be considered to determine whether retroactive application will further or retard its operation. This factor also rests on the side of the Commission's ruling. There is no persuasive reason to direct the Commission to give retroactive effect to its determination because the parties initially presumed they were under the Commission's jurisdiction and operated with the Commission's guidance for sixteen years.

The final consideration focuses on the equities. Without a doubt this factor weighs heavily in favor of non-retroactive application. It would be substantially inequitable under these facts to give retroactive effect to the Commission's September 19, 1985 order. For instance, it would be inequitable to burden 1986 consumers with higher costs for services received years earlier, often by different consumers. If the Commission decided to rule otherwise, it would change its order from terminating the certificate to vacating it. There is not one sound reason for this court to force the Commission to so hold. Because retroactivity is in issue and the Commission properly applied the *Chevron Oil* standard, we conclude that the Commission's determination to give prospective effect to its September 19, 1985 order was correct.

Finally, we find no merit in Dorchester's belief that the Commission's refusal to accept Dorchester's amended rates was arbitrary, capricious, and constituted an abuse of discretion. While we recognize Dorchester's plight in waiting seven long years for some action by the Commission, it is evident that during this period the appropriate standard to be applied was evolving. While there was some conflicting law on the subject, it was not until the 1983 decision in *Farmland Indus. Inc.*, 23 FERC ¶ 61,063, that the Commission enunciated a "primary function" test and set out the specific factors to be evaluated.

### III. Conclusion

For the above reasons we find tenuous rationale in the challenges proposed by

Dorchester, and therefore the Commission's orders are AFFIRMED.