LGUIDRY, J.
In this medical battery action, the trial court dismissed the lawsuit of Evelyn Wilson, on behalf of the minor child, Tryistan Wilson, appellant, pursuant to an exception of no cause of action filed by William N. Landry, III, M.D., appellee. We affirm.
FACTS AND PROCEDURAL HISTORY
Tryistan Wilson was born on August 21, 1996, at Lakeview Regional Medical Center in St. Tammany Parish, Louisiana. On August 22, 1996, appellee performed a circumcision on Tryistan.
On August 21, 1997, appellant filed a petition for damages against appellee, asserting, among other things, the following allegations:
V.
On August 22, 1996[, appellee] undertook the performance of a circumcision on Tryistan Wilson.
VI.
Prior to performing the circumcision, [appellee] had not prepared and explained a written consent form authorizing him to perform the procedure and had not obtained written consent to eir-cumcise Tryistan Wilson.
VII.
Prior to performing the circumcision, [appellee] had not orally discussed the performance of the procedure and had not obtained oral consent to circumcise Tryistan Wilson.
VIII.
In failing to obtain consent to perform the circumcision of Tryistan Wilson, [ap-pellee] violated the statutory and jurisprudential law of Louisiana.
IX.
In failing to obtain consent to perform the circumcision of Tryistan Wilson, [ap-pellee] violated the policies and procedures of Lakeview Regional Medical Center.
X.
The act of performing a circumcision procedure on Tryistan Wilson without proper authorization constitutes the commission of the intentional tort of medical battery by [appellee],
_]#1-
In the course of performing the circumcision of Tryistan Wilson, [appellee] cut Tryistan Wilson, causing severe injury to him.
XII.
After being cut by [appellee], Tryistan Wilson continued to bleed for several hours while preparations were made to perform reconstructive surgery on his penis.
[[Image here]]
Additionally, appellant alleged that Tryis-^an Las since had two reconstructive surgeries, has sizeable, permanent scarring, an(^ faces the prospect of possibly having impaired physical functioning of his penis,
On September 24, 1997, the State of Louisiana, through the Department of *657 Health and Hospitals (DHH), intervened in the suit to recover the sum of $4,418.71, plus legal interest, in connection with medical services provided to Tryistan in connection with his injuries as a result of the operation.
On October 10, 1997, appellee filed a dilatory exception of prematurity and lack of procedural capacity as to appellant’s petition,[1] and on October 17,1997, appellee filed a dilatory exception of prematurity as to DHH’s petition in intervention.[2]
On December 22, 1997, appellee filed a peremptory exception of no cause of action, contending that Louisiana law does not recognize a cause of action based on the intentional tort of medical battery in lack of informed consent cases. A hearing on the exception was held on May 13,1998, and a judgment maintaining the exception and dismissing with prejudice the |4daims of appellant and DHH was rendered on June 5,1998. This appeal followed.
ASSIGNMENTS OF ERROR
On appeal, appellant asserts the following assignments of error:
1. The trial court erred in its interpretation of Magee v. Landrieu[, 95-0437 (La.App. 1st Cir.3/17/95),] 653 So.2d 62 ... and Segura v. Frank [, 93-1271 (La.1/14/94),] 630 So.2d 714[.]
2. The trial court erred in interpreting the law to allow retroactive application of a judicial decision in derogation of a vested right.
3. The trial court erred in failing to conduct an analysis of the retroactive application of Lugenbuhl v. Dowling [, 96-1575 (La.10/10/97), 701 So.2d 447,] as set for[th] in Magee [,] supra, Lovell[ v. Lovell, 378 So.2d 418 (La.1979),] and Chevron [Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971)].
DISCUSSION
Peremptory Exception of No Cause of Action
The standard that must be applied in “no cause of action” cases is as follows:
The peremptory exception of no cause of action is a procedural device used to test whether, under the allegations of the petition, the law affords any remedy for the grievance asserted. Leon v. Deters Custom Homes, Inc., 97-0772 (La.App. 1st Cir.4/8/98), 711 So.2d 346, 348. The court must accept well-pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence. Walters v. Rubicon, Inc., 706 So.2d at 505-506. An appellate court owes no deference to a trial court’s ruling granting an exception of no cause of action because the exception raises a question of law and the lower court’s decision is based only on the sufficiency of the petition. City of New Orleans v. Board of Commissioners of Orleans Levee District, 93-0690 (La.7/5/94), 640 So.2d 237, 253.
Kewaunee Scientific Corp. v. Charles Ragusa & Son, Inc., 97-1823, p. 7 (La.App. 1st Cir.9/25/98), 723 So.2d 470, 474.
[ .¡Applicability of Lugenbuhl v. Dowling
On appeal, appellant argues that, because Lugenbuhl v. Dowling, 96-1575 (La.10/10/97), 701 So.2d 447, was decided after this lawsuit was filed, the trial court erroneously applied Lugenbuhl to this case. According to appellant, Lugenbuhl *658 announced a new rule of law, which supplanted and replaced a rule of law that had previously existed for fourteen years; and thus, Lugenbuhl should not have been retroactively applied to this case.
In Lugenbuhl, the Louisiana Supreme Court granted certiorari to review the issue of whether “lack of informed consent” eases should be treated as medical malpractice cases, or whether such cases should proceed under a theory of medical battery. The Court acknowledged that prior to the 1990 amendment to the Medical Malpractice Act (MMA), (whereby the Louisiana Legislature specified the theory of recovery in lack of informed consent claims as properly based on traditional fault theories to bring such claims under the MMA), it had imposed liability for the commission of medical battery. Lugenbuhl, 96-1575 at 5-9, 701 So.2d at 451-452. In short, the Court explained:
While the early development of liability for failing to obtain informed consent was based on concepts of battery or unconsented touching, the imposition of liability in later cases has been based on breach of a duty imposed on the doctor to disclose material information in obtaining consent. Such a breach of duty by the doctor results in liability based on negligence or other fault. While perhaps the performance of a medical procedure without obtaining any kind of consent, in the absence of an emergency, technically constitutes a battery, liability issues involving inadequate consent are more appropriately analyzed under negligence or other fault concepts. See W. Page Keeton et al, Pros-ser and Keeton on the Law of Torts 190 (5th ed. 1984) (“Beginning around 1960, however, it began to be recognized that the matter was really one of the standard of professional conduct, and so negligence has now generally displaced battery as the basis for liability”); 1 Fowler V. Harper et al., The Law of ToHs § 8.10 & nn. 36-38 (3d ed. 1997) (“The problem of informed consent is essentially one of professional responsibility, not intentional wrongdoing, and can | sbe handled more coherently within the framework of negligence law than as an aspect of battery.”); 4 Stuart M. Speiser et al., The American Law of Torts § 15.71 n. 21 (noting that “more and more courts have turned to the theory of negligence — professional malpractice — as the basis for suits predicated on lack of informed consent”); David W. Robertson et al., Cases and Materials on Torts 608 n. 1 (1989) (“modern courts analyze the adequacy of consent as a question of negligence, not battery”); 3 David W. Louisell & Harold Williams, Medical Malpractice § 22.03[2] (1997); Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 2-9(a) (1996) (“most modern authorities now treat lack of informed consent as a negligence, i.e., malpractice matter”); Natanson v. Kline, 186 Kan. 393, 350 P.2d 1093 (1960); Woolley v. Henderson, 418 A.2d 1123 (Me.1980).
The Louisiana Legislature has also specified the theory of recovery in lack of informed consent claims as properly based on traditional fault theories, apparently to bring such claims under the Medical Malpractice Act. By La. Acts 1990, No. 1093, the Legislature amended La.Rev.Stat. 40:1299.40 to add Subsection E, which establishes the Louisiana Medical Disclosure Panel to determine the risks and hazards related to medical care and surgical procedures that must be disclosed to the patient. Pertinent to the present discussion, Subsection 1299.40 E(2)(a) provides:
In a suit against a physician or other health care provider involving a health care liability or medical malpractice claim which is based on the failure of the physician or other health care provider to disclose or adequately to disclose the risks and hazards involved in the medical care or surgical procedure rendered by the physician or other health care provider, the only theory on which recovery may be *659 obtained is that of negligence in failing to disclose the risks or hazards that could have influenced a reasonable person in making a decision to give or withhold consent, (emphasis added).
Lugenbuhl, 96-1575 at 7-9, 701 So.2d at 452-458 (footnote omitted). The Court then articulated its rejection of “battery-based liability in lack of informed consent cases (which include no-consent cases) in favor of liability based on breach of the doctor’s duty to provide the patient with material information concerning the medical procedure.” Lugenbuhl, 96-1575 at 9, 701 So.2d at 458.
17This court recently dealt with a question similar to the one at issue in the present case in Banks v. Wright, 97-1869 (La.App. 1st Cir.11/6/98), 721 So.2d 1063, writ denied, 98-3026 (La.1/29/99), 736 So.2d 839. The plaintiff in Banks filed suit for intentional medical battery against Mary Jo Wright, M.D., the State of Louisiana through the Louisiana Health Care Authority, and Earl K. Long Medical Center. The plaintiff was admitted to Earl K. Long Medical Center on August 14, 1995, for an aorto-femoral bypass, scheduled for the following day. After the August 15, 1995 surgery, he discovered that he had been circumcised during surgery. He had not been informed of the possibility that he would be circumcised, nor did he consent to the procedure.
The State filed exceptions of prematurity and lack of subject matter jurisdiction, asserting that plaintiff was first required to present his claim to a state medical review panel before he could bring suit in district court. The trial court denied the exceptions, and the State appealed.
The question presented on appeal was “whether the trial court erred in ruling plaintiffs suit involved a medical battery and, therefore, did not require review by a state medical review panel.” Banks, 97-1869 at 3, 721 So.2d at 1064. Quoting extensively from and relying on the principals set forth in Lugenbuhl, this court answered the question in the affirmative. Thus, pursuant to La. R.S. 40:1299.39.1(A)(1)[3] and (B)(1)(a)(i),[4] the Isplaintiff was required to first present his claims to a state medical review panel. This was true even though the plaintiffs surgery, which gave rise to his claim for lack of informed consent, occurred prior to the Lugenbuhl decision.
Although the Banks case involved exceptions of prematurity and lack of subject matter jurisdiction, and the case before us concerns an exception of no cause of action, we opine that based on the same principles the trial court properly maintained the exception. In Banks, the proper vehicles for challenging the plaintiffs petition were exceptions of prematurity and lack of subject matter jurisdiction because the plaintiff had not yet filed a claim with the state medical review panel. Until the matter was presented to and evaluated by the panel, the suit based on lack of informed consent in district court was premature, and the court lacked jurisdiction to hear and decide the case. However, the record in this case reflects that appellant filed a complaint with the Patient’s Compensation Fund requesting review by a medical review panel in accordance with La. R.S. 40:1299.41 et seq. on July 17, 1997, prior to filing this suit on August 21, 1997. Thus, appellant had filed the necessary claim to recover under the appropriate cause of action — medical malpractice based on the breach of the doctor’s duty to *660 provide appellant with material information concerning the medical procedure. There is no separate cause of action of medical battery.
Application of Segura v. Frank and Lovell v. Lovell
On appeal, appellant argues that the trial court erred in its interpretation of Segura v. Frank, 93-1271 (La.1/14/94), 630 So.2d 714, cert. denied sub nom., Allstate Insurance Company v. Louisiana Insurance Guaranty Association, 511 U.S. 1142, 114 S.Ct. 2165, 128 L.Ed.2d 887 (1994), and Magee v. Landrieu, 95-0437 (La.App. 1st Cir.3/17/95), 653 Sogd9 62, units denied, 95-0790, 95-0800, 95-0805, and 95-0870 (La.4/21/95), 654 So.2d 319, 320, and misapplied the test for determining whether to apply a decision nonretroactively as set forth in Lovell v. Lovell, 378 So.2d 418, 421-422 (La.1979), and Magee, 95-0437 at 7, 653 So.2d at 66. We disagree.
The Louisiana Supreme Court in Lovell, 378 So.2d at 421-422, and later this court in Magee, 95-0437 at 7, 653 So.2d at 66, articulated three factors to consider when determining whether a decision should be made nonretroactive. The factors are:
(1) the decision to be applied nonretro-actively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) the merits and demerits must be weighed in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation; and (3) the inequity imposed by retroactive application must be weighed.
Segura set forth the following analysis and reasoning relevant to determining whether a recent decision should be applied to a pending case.
A[ ] general rule, ..., is that an appellate court is bound to adjudge a case before it in accordance with the law existing at the time of its decision. See Dripps v. Dripps, 366 So.2d 544 (La.1978), and cases cited therein. Where the law has changed during the pen-dency of a suit and retroactive application of the new law is permissible, the new law applies on appeal even though it requires reversal of a trial court judgment which was correct under the law in effect at the time it was rendered. See id. at 547-48.
* * Hi ❖ ^ Hi
In light of the foregoing, we conclude a claim is pending as long as it is subject to judicial scrutiny. Even though a lower court has adjudicated a claim and rendered judgment, the claim continues to be pending until appeal of that judgment has been exhausted. Until then, something further remains to fix the plaintiffs right to enforce the claim as well as the defendant’s obligation to pay it....
Segura, 93-1271 at 15-16, 19, 630 So.2d at 725, 727.
ImApplying the foregoing precepts, we conclude that the trial court correctly applied Lugenbuhl to this case. First, Lugenbuhl did not establish a principle of new law. Lugenbuhl was simply a restatement of the theory of recovery in lack of informed consent cases specified by the Louisiana Legislature. By La. Acts 1990, No. 1093, the Legislature amended La. R.S. 40:1299.40 to add Subsection E, which established the Louisiana Medical Disclosure Panel to determine the risks and hazards related to medical care and surgical procedures that must be disclosed to patients. Lugenbuhl, 96-1575 at 9, 701 So.2d at 452. This amendment provided that the only theory under which recovery would be allowed for failure to disclose or adequately disclose a risk or hazard to a patient is that of negligence; thus, bringing these claims under the purview of the MMA. Second, retroactive application of Lugenbuhl furthers the rule fashioned in the decision — that is, clarification that the *661 only theory of recovery in lack of informed consent cases is that provided in the MMA for breach of the physician’s duty of care. Dismissing pending litigation based on an alternative theory of recovery clearly furthers the purpose of the holding in Lugen-buhl. And third, retroactive application would not impose an inequitable result. Prior to the trial court’s decision that Lu-genbuhl applies to this case, there was no prior final, definitive judgment that would be nullified by application of Lugenbuhl. Furthermore, appellant has (and the record indicates that appellant is utilizing) another avenue of seeking redress. Specifically, appellant may file (and, in fact, has filed) a medical malpractice claim against appellee in accordance with the MMA.
CONCLUSION
Accordingly, the trial court’s judgment, maintaining appellee’s exception of no cause of action and dismissing this action with prejudice, is h , affirmed. Costs of this appeal are assessed to appellant, Evelyn Wilson, on behalf of the minor child Tryis-tan Wilson.
AFFIRMED.

. On August 29, 1997, appellee's August 28, 1997 motion for an extension of time to plead was granted, giving appellee until October 10, 1997 to respond.

. The trial court never made a ruling on either of these motions.

. La. R.S. 40:1299.39.1(A)(1) provides, in pertinent part:
All malpractice claims against the state, its agencies, or other persons covered by this Part shall be reviewed by a state medical review panel established as provided in this Section.

. La. R.S. 40:1299.39.1(B)(1)(a)® provides:
No action against the state, its agencies, or a person covered by this Part, or his insurer, may be commenced in any court before the claimant's complaint has been presented to a state medical review panel established pursuant to this Section.