Jay IMPERIAL, et al.

v.

Nina CASTRUITA, et al.

No. CV058940RGKCWX.

United States District Court, C.D. California.

Jan. 17, 2006.

Stuart L. Leviton, Leviton Law Group, Los Angeles, CA, for Plaintiffs.

Bonifacio B. Garcia, Burke Williams & Sorensen, Sarah Peters Gorman, Burke Williams and Sorensen, Los Angeles, CA, Kenneth D. Rozell, Peter L. Wallin, Wallin Kress Reisman & Kranitz, Santa Monica, CA, for Defendants.

KLAUSNER, District Judge.

**Proceedings: (IN CHAMBERS) ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION (DE 12)**

## I. *INTRODUCTION*

Jay Imperial and Lan Lee ("Plaintiffs") have sued the Rosemead City Council and Nina Castruita, in her official capacity as Clerk of the City of Rosemead ("Defendants") for conducting a recall election in violation federal and state voting laws. The Complaint alleges three claims for relief: (1) Violation of Voting Rights Act, 42 U.S.C. § 1971 ("VRA"); (2) Violation of California Elections Code Section 11242 ("Section 11242"); and (3) Violation of California Elections Code Section 11240 ("Section 11240").

On December 27, 2005, Plaintiffs filed an Ex Parte Application for Temporary Restraining Order ("TRO") and Order to Show Cause Re Preliminary Injunction, seeking an order enjoining Defendants from proceeding with the recall election scheduled for February 7, 2006. The Court granted Plaintiffs' request for TRO on January 4, 2006,[1] and set the current

---

1. On January 5, 2006, Defendant Castruita filed an Ex Parte Application for Clarification Regarding Restraining Order. The Application sought clarification as to whether the TRO enjoined Defendants from both proceeding with certain statutorily mandated actions in preparation for the February 7 election, as well as conducting the February 7 election. On January 6, 2006, the Court issued an Or-

OSC re Preliminary Injunction. For the following reasons, the Court grants Plaintiffs' request for Preliminary Injunction.

## II. BACKGROUND

Plaintiff Jay Imperial ("Imperial") is the Mayor of Rosemead (the "City"). Both Imperial and City Council member Gary Taylor are presently the subjects of the February 7 recall election. Plaintiff Lan Lee ("Lee") is a resident of, and registered voter in, the City. Lee, whose first language is Chinese, speaks limited English.

The recall measures began in April 2005, when recall proponents filed a Notice of Intent to Circulate Petition. The Notice, which was written in English only, requested an election to recall Imperial and Council member Taylor ("Recall Petition"). In May 2005, the City Clerk approved the Recall Petition as to form. From April 2005 to August 2005, the recall proponents circulated the Recall Petition in an effort to obtain the necessary number of signatures. Lee was allegedly one of the community members who was approached to sign the Recall Petition. In September 2005, the City Council received a Notice of Sufficiency from the City Clerk, which certified that the Recall Petition had been signed by at least 25% of the City's registered voters. Pursuant to the certification, on October 11, 2005, the City Council adopted a resolution ordering a recall election for February 7, 2006.

In the midst of the recall activities, the U.S. Department of Justice ("DOJ") filed a lawsuit against the City in July 2005, based on alleged violations of Section 203 of the VRA ("Section 203"). Generally, Section 203 provides that, in districts where at least a certain percentage of citizens are limited-English proficient, any materials relating to the electoral process must be bilingual or multilingual. In early September 2005, the parties settled the action through a Consent Decree. In the Consent Decree the City agreed to comply with the requirements of Section 203 in future elections. However, nowhere in the Complaint or Consent Decree is the February 7 election, or any recall election, in general, specifically mentioned. In November 2005, the Ninth Circuit issued *Padilla v. Lever*, which, for the first time, held that recall petitions are subject to the VRA's multilingual provisions.

On December 5, 2005, in light of the Ninth Circuit's holding in *Padilla*, the City Council adopted a resolution placing the recall election in abeyance until federal courts determined the validity of the Recall Petition. On December 13, 2005, the DOJ issued a letter to the City's Attorney stating that it would not seek to enjoin the February 7 election if it was reinstated. Thereafter, the City Council adopted a resolution on December 16, 2005 reinstating the February 7 election. On December 27, 2005, Plaintiffs filed the current Complaint, along with the Application for TRO.

## III. JUDICIAL STANDARD

 District courts in the Ninth Circuit use two tests when analyzing a request for a temporary or preliminary injunction: the "traditional-" and "alternative-" criteria tests. *See Save Our Sonoran, Inc. v. Flowers*, 381 F.3d 905, 911–12 (9th Cir.2004). Under the former test, the plaintiff must show "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Id.* at 912 (internal quotation and citation omitted). Under the latter test, the plaintiff must show either "a combination

der clarifying that Defendants were not en- joined from the preparation activities.

of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor." *Id.* These two tests "represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum." *Id.* (internal quotation marks and citations omitted).

## IV. *DISCUSSION*

██ Were the Court to graph this case on the Ninth Circuit's continuum chart, Plaintiff would show strongly on both the "likelihood of success" axis, as well as the "irreparable harm" axis. As discussed below, the preliminary injunction is appropriate because (1) there is probable chance of success on the merits; and (2) there is a high degree of irreparable harm to Plaintiffs.

### A. *Plaintiffs Have Demonstrated a Probable Chance of Succeeding on the Merits*

#### 1. *Procedural Challenge by Defendants*

As an initial matter, Defendants argue that Plaintiffs' action will likely fail, based on two procedural defects: (1) Plaintiffs have failed to name as defendants the recall proponents, who are indispensable parties to the action; and (2) Plaintiffs lack standing to pursue this action. For the following reasons, Defendants' arguments fail.

##### a. *Defendants Fail to Demonstrate that the Recall Proponents are Indispensable Parties*

Under Federal Rule of Civil Procedure 19(a) ("Rule 19(a)"), a party is indispensable if: (1) in his absence, complete relief cannot be accorded among those already party to the action, or (2) the party claims an interest in the action and is situated so that disposition of the action may (a) impair or impede the party's ability to protect that interest, or (b) leave any persons already party to the action subject to substantial risk of incurring double, multiple or inconsistent obligations. According to Federal Rule of Civil Procedure 19(b) ("Rule 19(b)"), if a person described in subsection (a) cannot be joined in the action, the court should determine whether the action should be dismissed.

██ Defendants' contention that the action should be dismissed for failure to name indispensable parties fails for two reasons. First, Defendants have offered only conclusory statements, without any evidence showing that the recall proponents are, in fact, indispensable as defined in Rule 19(a). Since Defendants have not shown an indispensable party under Rule 19(a), the inquiry under Rule 19(b) cannot be reached. Second, even if the recall proponents were parties indispensable under Rule 19(a), Defendants have failed to even argue, much less prove, that the parties cannot be joined in the action.

##### b. *Defendants Fail to Show that Plaintiffs Lack Standing to Pursue this Action*

██ To have standing, a litigant is required to have a concrete particularized injury, as opposed to a generalized grievance. *U.S. v. Hays,* 515 U.S. 737, 742–743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). Based on the facts known to the Court at this time, Plaintiffs have standing under this standard.

According to the Complaint, Plaintiffs will be subject to an illegal election, in violation of federal and state elections law, unless the election is enjoined (Compl., ¶¶ 19–21, 26, 30.) Imperial, who is suing in his individual capacity, is an elected official, and presumably a registered voter,

in the City of Rosemead. (Imperial Decl., ¶ 2.) Lee is also a registered voter in the City of Rosemead, where the subject election will occur. (Lee Decl., ¶ 2.) Based on their allegations, the injury both plaintiffs stand to suffer is being subjected, as voters, to an illegal election. Additionally, as the subject of the recall election, Imperial may be ousted from his elected position, also as a result of an allegedly illegal election. Therefore, Plaintiffs have alleged a concrete, particularized injury, as opposed to a generalized grievance, and have standing to pursue this action.

### 2. Substantive Issues

Plaintiffs have alleged three causes of action as the basis for permanently enjoining the February 7 election. Upon review and consideration of the facts and applicable law, the Court finds that Plaintiffs will probably prevail only as to the first cause of action for Violation of the VRA. However, prevailing on any one of their causes of action results in complete relief for Plaintiffs.

### a. First Claim for Violation of the VRA

Section 203 of the VRA provides that, in voting districts where at least a certain percentage of registered voters are limited-English proficient, any voting materials relating to the electoral process must be printed in both English, as well as the language(s) appropriate for those voting districts, 42 U.S.C.1973aa–1a.

■ It is undisputed that the City qualifies as a voting district subject to the provisions of Section 203. It is further undisputed that the Recall Petition circulated in April 2005 through August 2005 was written only in English. In November 2005, after the Recall Petition was printed and circulated, the Ninth Circuit issued an opinion in the matter of *Padilla v. Lever*, which directly addresses Section 203's governance of recall petitions. Specifically, the court holds that recall petitions are considered part of the "electoral process," as stated in the statute, and therefore, are subject to the multilingual provisions of Section 203. As such, the issue at hand is whether *Padilla* can or should be applied retroactively to this action.

In 1971, the U.S. Supreme Court enumerated a three-factor test for determining whether a court should retroactively apply case law. The three factors are: (1) whether a new principle of law has been established, either by overruling clear past precedent on which litigants may have relief, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether retrospective operation will further or retard the rule's purpose and effect; and (3) whether substantial inequitable results will occur due to retroactive application. *Chevron Oil Co. v. Huson*, 404 U.S. 97–106, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Then, in *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993), the U.S. Supreme Court stepped away from its previously-stated rule. In *Harper*, the Court "prohibit[s] the erection of temporal barriers to the application of federal law in noncriminal cases," and states that "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." 509 U.S. at 97, 113 S.Ct. 2510. In its reasoning, the Court explains, "In both civil and criminal cases, we can scarcely permit the substantive law to shift and spring according to the particular equities of individual parties' claims of actual reliance on an old rule and of harm from a

retroactive application of the new rule." *Id.* In a subsequent Ninth Circuit case, the court retroactively applies a Supreme Court interpretation of a statute. *U.S. v. City of Tacoma,* 332 F.3d 574 (9th Cir. 2003). In reviewing a district court's invalidation of a 1921 condemnation proceeding, the Ninth Circuit retroactively applies the Supreme Court's 1939 interpretation of a statute enacted in 1901. *Id.* The court reasons that statutory interpretation "cannot be considered a 'change' of operative law. The theory of a judicial interpretation gives the meaning of the statute from its inception, and does not merely give an interpretation to be used from the date of the decision." *Id.* at 580–581.

As previously stated, the *Padilla* decision was rendered after the Recall Petition was approved, printed and circulated, but before the actual election. Based on the reasoning stated in both *Harper* and *City of Tacoma,* the *Padilla* ruling, which interprets a 1965 statute, should be applied to the current case. Defendants assert that *Harper* spoke only as to Supreme Court rulings, and left *Chevron Oil* untouched as to other federal court rulings. While there is certainly language within the *Harper* decision to support Defendants' contention, the Supreme Court has given no explanation, and this Court see no reason, why the reasoning that forms the basis of the *Harper* decision would not apply to all federal court decisions involving federal law.

Moreover, based on the facts of the present case, even if this Court applied *Chevron Oil's* fairness test, the balance would still yield a finding in favor of Plaintiffs. Although *Padilla* establishes a new principle of law, for the following reasons, retroactive application of law will further its purpose and effect, and substantial inequities will not result due to its application. First, it is undisputed that a lawsuit was filed by the DOJ against the City of Rosemead in July 2005 for alleged viola-

tions of Section 203. (Plaintiffs' Request for Judicial Notice, Exh. B.) In fact, as a result of the lawsuit, the parties entered into a Consent Decree, whereby the City agreed to comply with the requirements of Section 203. *Id.* Although neither the lawsuit nor Consent Decree specifically mention recall petitions, the evidence indicates that the City was on notice that it had issues regarding compliance with the multilingual provisions of the VRA. Furthermore, the evidence indicates that the City must have been placed on notice during the same time frame as the Recall Petition's submission and approval. Second, in light of the aforementioned facts, the Court finds the retroactive application of *Padilla* serves to further the purpose and effect of Section 203. In the midst of investigation and action by the DOJ for possible violations of Section 203, the City should not be allowed to bury its head in the sand, then claim that the current Section 203 issue was not foreshadowed. Finally, retroactive application of the law, which would likely result in enjoining the February 7 election would not prevent another such election to occur at a later date.

Based on the foregoing, this Court finds that Plaintiffs will probably prevail on their Violation of VRA claim.

### b. Second and Third Claims for Violation of the California Election Laws

■ Plaintiffs also allege that Defendants have violated both California Election Code Sections 11240 and 11242. For the following reasons, the Court finds that Plaintiffs have not demonstrated a likelihood of prevailing on the merits as to these remaining causes of action.

Section 11240 provides that within fourteen (14) days after a Certificate of Sufficiency is received, the governing body shall issue an order stating that a recall election shall be held. Section 11242 pro-

vides that the recall election shall not be held less than 88, or more than 125, days after the issuance of the Section 11240 order.

At dispute is whether the Section 11240 order was made by the City Council on October 11, 2005, after the City Council first received a Notice of Sufficiency from the City Clerk, or December 16, 2005, when the City Council reinstated the election after it stayed the election earlier in the month. If the former, then Sections 11240 and 11242 have not been violated. If the latter, then Defendants have violated the statutes.

Upon review and consideration of the facts and law, this Court finds October 11, 2005 to be the operative date because of the non-discretionary language of the applicable statutes. Both Sections 11240 and 11242 specifically use the mandatory language, "shall," indicating that the governing body has no discretion in the matter. Therefore, when the City Council adopted a resolution ordering the February 7 recall election, it did so under a statutory mandate. Furthermore, there is no indication that a second, overriding Notice of Sufficiency was ever received from the City Clerk. As such, the December 5, 2005 stay and December 16, 2005 reinstatement of the election have no bearing on the election itself, since the City Council has no discretion as to whether the election goes forward or not.

■ Plaintiffs cite to *216 Sutter Bay Assoc. v. County of Sutter*, 58 Cal.App.4th 860, 68 Cal.Rptr.2d 492 (1997), to support their contention that such discretion is vested in the City Council. However, this case simply states that "a local legislative body can rescind legislative acts at any time until the act is complete, provided that vested rights are not violated and that such rescission conforms to the rules for the government of the body." *216 Sutter Bay Assoc.*, 58 Cal.App.4th at 871, 68 Cal.

Rptr.2d 492. This case is not on point because, as discussed above, rather than a legislative act, which is within the discretionary authority of a legislative body, the statutes in question make the ordering of a recall election a purely ministerial function, with no discretion involved. In addition, for the same reasons, the City's voters have a vested right to have an election within the time frames specified by the statute. To rescind, or otherwise change the election time frame, would constitute a violated of a vested right.

As previously stated, although this Court finds that Plaintiffs have not demonstrated a likelihood of prevailing on their second two causes of action, all three causes of action seek the same injunctive relief. Therefore, to likely prevail on the merits, Plaintiffs need only demonstrate that they will likely prevail on any one of the causes of action. Since Plaintiffs will probably prevail on its first cause of action, this Court finds that Plaintiffs will probably prevail on the merits for purposes of the determining whether a preliminary injunction should issue.

## B. *Plaintiffs Have Demonstrated a High Degree of Irreparable Harm*

■ In this case, the balance of hardships weighs in favor of Plaintiffs. Defendants argue that if the Court issues a preliminary injunction, it would defeat almost a year's worth of effort and realistically block the City's citizens from any recall of the target officials. This argument is unavailing, particularly in light of the harm Plaintiffs stand to suffer.

First, as Defendants have stated in their own papers, enjoining the February 7 election will not necessarily prevent the election from ever occurring. According to the time line set forth by Defendants, immediately starting the process anew would place the recall election sometime in Octo-

ber 2006, about five months prior to the time Imperial would be up for reelection. On the other hand, if the February 7 election is allowed to proceed before this case is resolved, Plaintiffs may be subjected to an illegal election. More significantly, however, Imperial faces the possibility of being taken out of office as a result of an illegal election, an injury for which there is no practical or reasonable remedy. Moreover, Lee faces the possibility of having been excluded from participating in what the Ninth Circuit has deemed a crucial part of the electoral process. First, she would not be afforded all the information upon which she could make an informed decision to either support or oppose the recall. Second, she will have been excluded from the opportunity of exercising her rights as a citizen by rallying against the ordering of a recall election. Again, these harms would be almost impossible to remedy.

Because Plaintiffs will probably prevail on their Violation of VRA claim, and because Plaintiffs would suffer a severe and irreparable harm otherwise, the Court finds that a preliminary injunction is appropriate in this case.

## V. CONCLUSION

In light of the foregoing, Plaintiffs' Motion for Preliminary Injunction is granted.

**IT IS SO ORDERED.**