IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alcatel-Lucent USA Inc.,      :
     :
     Petitioner      :
     : No. 803 F.R. 2017
     v.      : Argued:  June 22, 2022
     :
Commonwealth of Pennsylvania,      :
     :
     Respondent :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
        HONORABLE PATRICIA A. McCULLOUGH, Judge
        HONORABLE ANNE E. COVEY, Judge
        HONORABLE MICHAEL H. WOJCIK, Judge
        HONORABLE CHRISTINE FIZZANO CANNON, Judge
        HONORABLE ELLEN CEISLER, Judge
        HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK          FILED:  December 28, 2022

Before this Court *en banc* are the Exceptions filed by Alcatel-Lucent USA, Inc. (Taxpayer) to this Court's unreported panel decision, *Alcatel-Lucent USA, Inc. v. Commonwealth of Pennsylvania* (Pa. Cmwlth., No. 803 F.R. 2017, filed September 13, 2021) (*Alcatel-Lucent*), which affirmed the order of the Board of Finance and Revenue (F&R) and sustained a decision of the Commonwealth of Pennsylvania (Commonwealth) Department of Revenue's (Department) Board of Appeals (BOA) denying Taxpayer's petition for a refund of corporate net income tax paid in the amount of $2,047,875 for the tax year ended December 31, 2014 (2014 Tax Year).  At issue was the application of the percentage cap for "net loss

carryover" (NLC) deductions contained in Section 401(3)4.(c)(1)(A)(V) of the Tax Reform Code of 1971 (Tax Code)[1] for the 2014 Tax Year following the Supreme Court's decision in *Nextel Communications of the Mid-Atlantic, Inc. v. Commonwealth*, 171 A.3d 682 (Pa. 2017), *cert. denied*, 138 S.Ct. 2635 (2018).[2] Taxpayer challenged the Department's policy that subjected only large corporate taxpayers to the percentage cap and excluded application to small corporate taxpayers for the tax years beginning prior to January 1, 2017.[3]  The panel applied *Nextel* prospectively and determined that Taxpayer correctly paid corporate net income taxes in the amount of $2,047,875 for the 2014 Tax Year by using the 2014 NLC deduction provision and was not entitled to a refund.  In addition, the panel concluded that Taxpayer was not entitled to a refund pursuant to the Due Process and Equal Protection Clauses of the United States Constitution and the Remedies Clause of the Pennsylvania Constitution.  *See* U.S. Const. amend. XIV, §1; Pa. Const. art. VIII, §1.

---

[1] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7401(3)4.(c)(1)(A)(V).  This section provides:

> (c) (1) The net loss deduction shall be the lesser of:
>      (A) (V) For taxable years beginning after December 31, 2013, the greater of twenty-five per cent of taxable income as determined under subclause 1 *or, if applicable, subclause 2 or four million dollars ($4,000,000)* . . . .

72 P.S. §7401(3)4.(c)(1)(A)(V) (emphasis added).

[2] In *Nextel*, the Supreme Court severed the unconstitutional flat-dollar cap from the NLC provision while preserving the percentage cap. *Nextel*, 171 A.3d at 705.

[3] For tax years between 2007 and 2017, the NLC deduction included both a flat-dollar cap *and* a percentage cap.  *See* 72 P.S. §7401(3)4.(c)(1)(A)(II)-(VII).  In response to *Nextel*, the General Assembly eliminated the flat-dollar cap for taxable years beginning after December 31, 2017.  *See* 72 P.S. §7401(3)4.(c)(VI)-(VIII).

After the panel decided *Alcatel-Lucent*, on December 22, 2021, the Supreme Court decided the appeal in *General Motors Corp. v. Commonwealth*, 265 A.3d 353 (Pa. 2021) (*GM II*), which involved similar issues regarding NLC deductions and retroactivity. We are now tasked with applying *GM II* to the Exceptions filed here. For the reasons that follow, we sustain Taxpayer's Exceptions and remand to F&R for the issuance of a refund.

## I. Background

Taxpayer is a Delaware corporation that provides IP networking, ultra-broadband access, cloud technology, communications equipment, and related services to its customers. Taxpayer carried into the 2014 Tax Year net losses, as defined under Section 401(3)4.(b) of the Tax Code, 72 P.S. §7401(3)4.(b), apportioned to Pennsylvania in the amount of $791,244,978, which had accumulated since the tax year ended September 30, 2000. For the 2014 Tax Year, Taxpayer's taxable income apportioned to Pennsylvania before accounting for any net loss deduction was $27,332,333. At the time, the NLC deduction was the greater of 25% of income apportioned to Pennsylvania or $4,000,000. 72 P.S. §7401(3)4.(c)(1)(A)(V). Taxpayer took a net loss deduction of $6,833,083, which was the greater amount. After accounting for the NLC deduction, Taxpayer reported taxable income apportioned to Pennsylvania of $20,499,250, which resulted in a corporate net income tax liability of $2,047,875, which Taxpayer paid in full. The Department accepted Taxpayer's tax report as filed and did not issue an assessment. Stipulation of Facts (S.F.) Nos. 2-12.

Notably, for the 2014 Tax Year, 13,566 large corporate taxpayers carried net losses, which exceeded taxable income. Of them, 347 had Pennsylvania

3

taxable income in excess of the $4,000,000 net loss cap, and thus were unable to deduct their net losses to reduce their Pennsylvania taxable income to $0. Those corporations paid corporate net income tax. The remaining small corporate taxpayers (13,219) had Pennsylvania taxable income that did not exceed the $4,000,000 net loss cap, and thus were able to deduct their net losses without limitation and thereby reduce their Pennsylvania taxable income to $0. They paid no corporate net income tax in 2014. S.F. Nos. 16-17.

Prior to the Supreme Court's *Nextel* decision, Taxpayer filed a Petition for Refund with the BOA seeking a refund of the Pennsylvania corporate net income tax in the amount of $2,047,875 paid for the 2014 Tax Year. Taxpayer raised general issues regarding the calculation of the corporate net income tax as well as a constitutional challenge that the NLC deduction limitation violated the Uniformity Clause of the Pennsylvania Constitution, Pa. Const. art. VIII, §1, by creating variable effective tax rates, *i.e.*, Taxpayer paid tax while similarly situated taxpayers did not. Taxpayer requested an unlimited NLC deduction and corresponding tax refund. The BOA and, on further appeal, F&R denied Taxpayer's refund request and declined to address the constitutional issues. Taxpayer's petition for review to this Court followed.

On October 18, 2017, the Supreme Court decided *Nextel*, in which it severed the unconstitutional flat-dollar cap, while preserving the percentage cap, from the NLC provision at issue. *Nextel*, 171 A.3d at 705. Following the *Nextel* decision, the Department issued Corporation Tax Bulletins, which accurately reflect the Department's past and ongoing policy practice to not reassess corporations that utilized the flat-dollar deduction until *after* January 1, 2017. S.F. No. 22. Thus, the

4

Department implemented *Nextel* prospectively by removing the flat-dollar deduction beginning in 2017 and thereafter. *Id.*

Before this Court, Taxpayer argued that the Department violated the Uniformity Clause of the Pennsylvania Constitution by applying the 2014 NLC deduction provision as written, rather than by retroactively applying *Nextel* and recalculating the tax liabilities of all taxpayers that had utilized the $4,000,000 cap in accordance with the remaining percentage cap. Alternatively, Taxpayer asserted that the Due Process and Equal Protection Clauses of the United States Constitution, U.S. Const. amend. XIV, §1, and the Remedies Clause of the Pennsylvania Constitution, Pa. Const. art. 1, §11, entitles Taxpayer and other similarly situated corporations to a remedy.

In *Alcatel-Lucent*, a panel of this Court rejected both arguments. In determining whether *Nextel* should apply retroactively, we applied the three-part *Chevron*[4] test: "(1) whether the decision establishes a new principle of law; (2) whether retroactive application of the decision will further the operation of the decision; and (3) the relevant equities." *Alcatel-Lucent*, slip op. at 8 (quoting *GM I*, 222 A.3d at 47; citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07 (1971) (plurality)). We determined that while the first prong supported retroactive application, the second and third prongs did not. *Id.* With regard to the first prong, we held that the Supreme Court did not establish a new principle of law, but rather applied existing case law to which it had steadfastly adhered for over a century. *Id.*, slip. op. at 11. However, we determined that retroactive application would not forward the application of *Nextel* because, in *Nextel*, the Supreme Court eliminated the flat-dollar deduction, but upheld the percentage cap, which Taxpayer correctly

---

[4] *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971) (plurality).

5

paid and is attempting to avoid. *Id.*, slip op. at 11-12. As for the third prong, we concluded that retroactively applying *Nextel* was inequitable for unsuspecting taxpayers that legally claimed the dollar-based deduction and would now owe more taxes, but for the statute of limitations. As a result, we concluded that the *Nextel* decision would apply prospectively only to the case. *Id.* We also detailed the reasons for rejecting Taxpayer's arguments under the Due Process, Equal Protection, and Remedies Clauses. Ultimately, this Court determined that Taxpayer correctly paid corporate net income taxes in the amount of $2,047,875 for the 2014 Tax Year by using the 2014 NLC deduction provision and was not entitled to a refund. Thus, we affirmed F&R's decision denying Taxpayer's refund request. *Id.*

Our analysis in *Alcatel-Lucent* mirrored our analysis in *General Motors Corporation v. Commonwealth*, 222 A.3d 454 (Pa. Cmwlth. 2019) (*GM I*), *affirmed in part, reversed in part*, *GM II*, 265 A.3d 353. We applied the same three-part *Chevron* test to both cases. However, in *GM I*, we determined that all three prongs of the *Chevron* test were met because the facts were different. The key difference between *GM I* and the present case was that the NLC deduction at issue in *GM I* contained only the flat-dollar deduction, not the percentage cap. The flat-dollar deduction created a non-uniform classification based solely on whether the taxpayer's income exceeded the $2,000,000. Taxpayers whose income exceeded $2,000,000 paid the corporate net income tax, while taxpayers whose income did not exceed $2,000,000 did not pay the tax in violation of the Uniformity Clause. To remedy this constitutional infirmity, we severed the $2,000,000 flat-dollar deduction from the NLC provision of the Tax Code. With the removal of the statutory cap, the taxpayer in *GM I* was entitled to a refund. Conversely, here, Taxpayer paid tax under the percentage cap, which the Supreme Court upheld as constitutional.

6

Consequently, we reached a different result in *Alcatel-Lucent* (no retroactive application of *Nextel*; no refund) than *GM I* (retroactive application of *Nextel*; refund).

Taxpayer filed timely Exceptions to *Alcatel-Lucent*.[5] Shortly thereafter, the Supreme Court decided *GM II*, which affirmed in part and reversed in part this Court's decision in *GM I*. In *GM II*, the Supreme Court upheld *GM I*

---

[5] Taxpayer filed its exceptions October 13, 2021, pursuant to Pennsylvania Rule of Appellate Procedure 1571(i), which states:

> Any party may file exceptions to an initial determination by the court under this rule within 30 days after the entry of the order to which exception is taken. Such timely exceptions shall have the effect, for the purposes of Rule 1701(b)(3) (authority of lower court or agency after appeal) of an order expressly granting reconsideration of the determination previously entered by the court. Issues not raised on exceptions are waived and cannot be raised on appeal.

Pa. R.A.P. 1571(i). As we have stated:

> In tax appeals from the Board, this Court functions as a trial court, and exceptions filed to its final order have the effect of an order granting reconsideration. [*Consolidated. Rail Corp.*] *v. Commonwealth*, 679 A.2d 303, 304 (Pa. Cmwlth. 1996). This Court reviews *de novo* the determinations of the [F&R]. *Kelleher v. Commonwealth*, 704 A.2d 729, 731 (Pa. Cmwlth. 1997). "Stipulations of fact are binding upon both the parties and the Court." *Id.* "However, this Court may draw its own legal conclusions." *Id.* "Our scope of review in tax appeals is . . . limited to the construction, interpretation and application of a State tax statute to a given set of facts." *United Services Automobile Association v. Commonwealth*, . . . 618 A.2d 1155, 1156 ([Pa. Cmwlth.] 1992) (quoting *Escofil v. Commonwealth*, . . . 406 A.2d 850, 852 ([Pa. Cmwlth.] 1979)).

*American Electric Power Service Corp. v. Commonwealth*, 184 A.3d 1031, 1034 n.7 (Pa. Cmwlth. 2018).

7

insofar as we deemed *Nextel* to apply retroactively. However, the Supreme Court reversed *GM I* to the extent we remedied the violation of the Uniformity Clause by severing the $2,000,000 NLC deduction cap and allowing the taxpayer to take an unlimited NLC deduction for the tax year ended December 31, 2001 (2001 Tax Year). Instead, the Supreme Court ruled that the proper remedy was to sever the NLC deduction provision in its entirety for the 2001 Tax Year. Despite this ruling, the Supreme Court determined that the taxpayer was entitled to relief to remedy the due process violation of the taxpayer's rights and provide "meaningful backward-looking relief" pursuant to *McKesson Corp. v. Florida Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18 (1990). Thus, the Supreme Court affirmed our remand to F&R to recalculate Taxpayer's corporate net income tax for the 2001 Tax Year without capping its NLC deduction and to issue a refund based upon that recalculation. *GM II*.

As a result of *GM II* and the rationale expressed therein, we must reconsider our analysis in *Alcatel-Lucent* in ruling on Taxpayer's Exceptions. The parties' briefs on the Exceptions address the impact of *GM II* on this case. Following briefing and argument, the Exceptions are now ready for disposition.

## II. Issues

The issues presented to us on the Exceptions are:

A. Whether the *Nextel* decision, in which the Pennsylvania Supreme Court held that the statutory flat cap on net loss deductions violated the Uniformity Clause of the Pennsylvania Constitution and, therefore, must be stricken from the statute, leaving only a percentage cap, applies retroactively?

8

B. Whether federal due process requires the Commonwealth to issue a refund to Taxpayer to remedy the Uniformity Clause violation caused by the statutory flat cap on the net loss deduction?

### III. Discussion
### A. Retroactive Application of *Nextel*

Taxpayer argues that *GM II* clearly holds that *Nextel* applies retroactively to all years. As our Supreme Court opined: "*Nextel* merely applied [a] century of jurisprudence to the NLC deduction provision." *GM II*, 265 A.3d at 373. Because *Nextel* did not establish "a new principle of law, *Nextel* does not necessitate prospective application under the *Chevron* test." *Id.* Importantly, because the first factor in the *Chevron* test, *i.e.*, that there is no new principle of law, "control[s] this analysis," the Court does not need to address "the second and third *Chevron* factors." *Id.* at 373 n.17. Thus, under *GM II*, the *Nextel* decision applies retroactively to all years.

The Commonwealth counters that Taxpayer was unaffected by *Nextel*'s severance of the dollar-based NLC deduction. Taxpayer seeks a windfall tax refund solely because the Department did not retroactively assess tens of thousands of unsuspecting taxpayers after *Nextel*. A panel of this Court properly rejected Taxpayer's argument and held that *Nextel* applies prospectively. The panel's holding is consistent with the Supreme Court's well-established rule of invalidating tax statutes on a prospective basis. Denying a retroactive remedy, even to the parties in this case, is precisely what occurred in *Nextel*. Further, the panel correctly determined that the first *Chevron* factor is not dispositive. Balancing the other two *Chevron* factors requires *Nextel*'s prospective application because retroactive application would not forward the operation of *Nextel*, and retroactively assessing taxpayers would produce substantially inequitable results. As the panel properly

9

recognized, *GM I* is factually distinguishable from this case. Applying *Nextel* retroactively here would have devastating fiscal repercussions of refunding over $100 million. Even if the Department mistakenly applied *Nextel* prospectively, that error does not excuse Taxpayer from paying the correct tax. Taxpayer paid the correct amount of tax and is not owed any refund.

As this Court held in *GM I* and *Alcatel-Lucent*, and the Supreme Court affirmed in *GM II*, the first part of the *Chevron* test clearly supported retroactive application because *Nextel* does not establish a new principle of law. In *Alcatel-Lucent*, we distinguished this case from *GM I* upon determining that the Taxpayer could not satisfy the second and third prongs.

However, in *GM II*, the Supreme Court discounted the second and third prongs of the *Chevron* test. The Supreme Court held that the "first factor controls" the analysis and, as a result, it did not "speak to the second and third *Chevron* factors." *GM II*, 265 A.3d at 368, 373 n.17. The Supreme Court opined:

> "[T]he general rule in Pennsylvania will be that, at least where prior judicial precedent isn't overruled, a holding of this Court that a statute is unconstitutional will generally be applied to cases pending on direct appeal in which the constitutional challenge has been raised and preserved." Despite this general rule, we expressly acknowledged the "possibility of equitable balancing *in extraordinary cases*." Moreover, this Court highlighted that while *the general rule in Pennsylvania favors retroactive application*, *some subject areas* may require "additional latitude to implement a ruling prospectively," and further observed the special considerations relevant to "public financing or tax refunds" . . . .

*GM II*, 265 A.3d at 366 (quoting *Dana Holding Corp. v. Workers' Compensation Appeal Board*, 232 A.3d 629, 647-649 (Pa. 2020)) (emphasis added and citations omitted). The Supreme Court concluded that "[a]bsent the establishment of a new

10

principle of law, *Nextel* does not necessitate prospective application under the *Chevron* test." *Id.* at 373.

Upon review of *GM II*, *Nextel* applies retroactively in this "subject area" of corporate net income tax dealing with NLC deductions under the first prong because *Nextel* did not introduce a new principle of law. Because the other factors of the *Chevron* test do not come into play, *see GM II*, we are constrained to sustain Taxpayer's first Exception.

### B. Due Process & *McKesson*

Next, Taxpayer argues that federal due process requires the Commonwealth to issue a refund to Taxpayer to remedy the Uniformity Clause violation that was caused by the statutory flat cap on net loss deduction. In *GM II*, the Supreme Court determined that the taxpayer was not entitled to an additional net loss deduction as a matter of statutory severance. Notwithstanding, the Court determined that the taxpayer was entitled to an uncapped deduction based on due process. The Supreme Court ruled that federal due process mandates that the tax position of all taxpayers for a given tax year be equalized. Because the statute of limitations to assess small taxpayers expired, the only way to equalize Taxpayer's position with small taxpayers was to order the Commonwealth to issue a refund to Taxpayer for the year in question. The same analysis applies here. Taxpayer paid tax for the 2014 Tax Year because its income exceeded the flat-dollar cap, while over 13,000 taxpayers paid no tax because their income did not exceed the cap. Due process, under *GM II*, requires that Taxpayer's position be equalized with those other taxpayers. Because the statute of limitations has expired on the 2014 Tax Year, the Department cannot reassess the 13,000 favored taxpayers to pay the correct tax. The

11

only way to equalize the position of Taxpayer with the favored taxpayers is to allow Taxpayer a full net loss deduction, like the other taxpayers enjoyed.

The Commonwealth responds that the panel correctly determined that due process does not require a windfall tax refund. Taxpayer incorrectly relies upon *GM II*'s due process analysis. *GM II* referenced *McKesson*'s due process principles only because relief applied retroactively. Here, the panel correctly recognized that the relief provided in *GM I* was limited to the context of that appeal. Because the panel determined that *Nextel* applied prospectively here, Taxpayer is not entitled to the refund sought. Even assuming *McKesson* applies, Taxpayer's request to disregard any equitable considerations is refuted by *McKesson* itself, which weighed relevant equities.

The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. In *McKesson*, the U.S. Supreme Court examined the requirements of due process in a tax discrimination case. There, the state court properly struck down a liquor tax as unconstitutional because it discriminated against interstate commerce by giving preference for liquor made from state-grown crops. Despite declaring the law unconstitutional, the state court refused to provide a refund for any other form of post-payment relief.

On appeal, the U.S. Supreme Court reversed the state court's failure to provide meaningful relief for its payment of an unlawful tax. The U.S. Supreme Court held that "the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." *McKesson*, 496 U.S. at 28 (footnote omitted). Due process is satisfied

12

only if the "position" that the taxpayer occupies at the end of the day is "equivalen[t] to the position actually occupied by the [taxpayer's] favored competitors." *Id.* at 42. It is insufficient to merely "place [a taxpayer] in the same tax position that [the taxpayer] would have been placed by . . . a hypothetical" reformation of a discriminatory statute. *Id.* at 41.

As our Supreme Court explained in *Annenberg v. Commonwealth*, the U.S. Supreme Court in *McKesson*

> did not bind the state's hands in choosing what type of backward looking remedy it would employ. Rather, the Court held that State could cure the invalidity by: (1) refunding the difference between the tax paid and the tax that would have been assessed had the taxpayer been granted the unlawful exemption; (2) assessing and collecting back taxes, to the extent consistent with other constitutional restrictions, from those who benefited from the unlawful exemption during the contested tax period, calibrating the retroactive assessment to create in hindsight a nondiscriminatory scheme; or (3) applying a combination of a partial refund and a partial retroactive assessment, so long as the resultant tax actually assessed during the contested tax period reflects a scheme that does not discriminate against interstate commerce.

757 A.2d 338, 349-50 (Pa. 2000) (footnote omitted).

Here, unlike the taxpayer in *GM*, and like the taxpayer in *Nextel*, Taxpayer correctly paid its taxes in conformity with the retained percentage cap, which was upheld as constitutional in *Nextel*. On this basis, the panel concluded that Taxpayer was not entitled to a refund. *Alcatel-Lucent*. In fact, the Taxpayer in *Nextel* did not receive a refund. However, the Supreme Court emphasized that it was not presented with a robust due process argument based upon *McKesson* in *Nextel*. *GM II*, 265 A.3d at 360 n.4; 375 n.19. The Supreme Court

13

> contrasted the situation in *Nextel*, which did not involve a discriminatory application of a constitutional statute as in the cited cases, *but instead involved an unconstitutional tax provision, which when severed, resulted in Nextel having paid its taxes in conformity with the retained, constitutional 12.5% NLC deduction cap*. We observe that *Nextel* did not present this Court with a robust due process argument based upon *McKesson* . . . as does [the taxpayer] in the case at bar . . . .

*GM II*, 265 A.3d at 360 n.4 (emphasis added); *see id.* at 375 n.19 ("[T]his Court in *Nextel* was not presented with a robust due process argument based upon *McKesson*.").

Based upon the Supreme Court's retroactive application of *Nextel* and its discussion and application of *McKesson* in *GM II*, we now conclude that Taxpayer is entitled to a refund here. The right to uniform taxation is a right protected by the Due Process Clause. *McKesson*; *GM II*. "[B]ecause exaction of a tax constitutes a deprivation of property, the State must provide procedural safeguards against unlawful exactions in order to satisfy the commands of the Due Process Clause." *GM II*, 265 A.3d 379 (quoting *McKesson*, 496 U.S. at 36).

Applied here, in the 2014 Tax Year, the small corporate taxpayers benefited from the NLC's flat-dollar deduction, which was declared unconstitutional. Small corporate taxpayers were favored while large corporate taxpayers with incomes greater than $4,000,000 were disfavored under the statutory scheme. Even though Taxpayer correctly paid its taxes in conformity with the retained and constitutionally valid percentage cap, Taxpayer was disadvantaged when compared to small corporate taxpayers that utilized the unconstitutional flat-dollar deduction and paid no tax. To equalize the actual tax positions, *McKesson* requires that either the favored taxpayers be assessed additional taxes or the unfavored taxpayer be refunded the taxes it paid. *GM II*. Because a retroactive

14

reassessment of favored taxpayers' tax liability is foreclosed under the statute of limitations, replete with inequities, the only remedy available is to issue Taxpayer a refund to remedy the Uniformity Clause violation to equalize the tax positions between favored and nonfavored taxpayers.

## IV. Conclusion

In light of *GM II*, in which the Supreme Court declared that *Nextel* applies retroactively and that due process requires equalizing the tax positions between favored and nonfavored taxpayers, we sustain Taxpayer's Exceptions, reverse the order of F&R, and remand to F&R for the issuance of a refund.

MICHAEL H. WOJCIK, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Alcatel-Lucent USA Inc., | : | |
| | : | |
| Petitioner | : | |
| | : | No. 803 F.R. 2017 |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| | : | |
| Respondent | : | |

# **O R D E R**

AND NOW, this 28th day of December, 2022, the Exceptions filed by Petitioner Alcatel-Lucent USA, Inc. to this Court's panel decision in this matter, *Alcatel-Lucent USA, Inc. v. Commonwealth of Pennsylvania* (Pa. Cmwlth., No. 803 F.R. 2017, filed September 13, 2021), are SUSTAINED. The order of the Commonwealth of Pennsylvania, Board of Finance and Revenue (F&R) dated August 23, 2017, is REVERSED, and this matter is REMANDED to F&R to issue Petitioner a refund of corporate net income tax paid in the amount of $2,047,875 for the tax year ended December 31, 2014, in accordance with the foregoing opinion.

Jurisdiction is relinquished.

_____
MICHAEL H. WOJCIK, Judge